PEOPLE v GLOVER

Docket No. 82055. Submitted April 3, 1986, at Detroit. Decided
August 18, 1986. Leave to appeal applied for.

Alfred Glover was charged with first-degree murder and felony-
firearm and, following a jury trial in Recorder's Court of
Detroit, James E. Roberts, J., was convicted of voluntary man-
slaughter and found not guilty of felony-firearm. Defendant
appealed, asserting that there was insufficient evidence ad-
duced at the preliminary examination to bind him over for trial
on first-degree murder, that the trial court should have sua
sponte instructed the jury on the law pertaining to accidental
killing, that he did not receive adequate assistance of counsel,
that the trial court used a prohibited method for jury selection
and that the trial court relied on improper considerations in
imposing sentence.

The Court of Appeals *held:*

1. There was evidence upon which a jury could have found
that defendant had adequate time after the confrontation with
the victim so that in turn it could make a finding of premedita-
tion and deliberation. Accordingly, it was proper to bind defen-
dant over on the first-degree murder charge.

2. Since there was evidence that the fatal shot might have
been the result of the murder weapon being accidently dis-
charged during a struggle initiated by the deceased, the jury
should have been instructed as to the legal consequences of
either an unintentional shooting or a shot fired in self defense.

REFERENCES

Am Jur 2d, Criminal Law §§ 411-420, 535-550, 967-992.

Am Jur 2d, Homicide §§ 45-52, 519-521.

Am Jur 2d, Jury §§ 233-241.

Accused's right, in homicide case, to have jury instructed as to both
unintentional shooting and self-defense. 15 ALR4th 983.

Additional peremptory challenges because of multiple criminal
charges. 5 ALR4th 533.

Modern status of rules and standards in state courts as to adequacy
of defense counsel's representation of criminal client. 2 ALR4th
27.

Propriety of consideration of credibility of witness in determining
probable cause at state preliminary hearing. 84 ALR3d 811.

Since one or the other or both of those instructions was required to properly state the law applicable to the case, it was error mandating reversal for the trial court not to so instruct sua sponte.

3. Defendant has failed to preserve by a motion for a new trial the question of whether he was denied effective assistance of counsel, since his claims are based on facts not in the trial court record.

4. The jury selection method was not in accordance with the method mandated by court rule. On retrial, the court shall follow exactly the court rule concerning the exercise of peremptory challenges.

5. The trial court improperly based its sentence on the belief that the defendant should have been convicted of the charged offense.

Reversed and remanded for a new trial.

1. CRIMINAL LAW — APPEAL — MAGISTRATES.

A reviewing court may not substitute its judgment for that of a magistrate who presided over a preliminary examination, but may reverse the magistrate's decision only if it appears on the record that there has been an abuse of discretion.

2. CRIMINAL LAW — PRELIMINARY EXAMINATION — MAGISTRATES.

It is the duty of the examining magistrate to bind a defendant over for trial if it appears at the conclusion of the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed it; if evidence conflicts or raises a reasonable doubt of the defendant's guilt, such questions should be left for the jury upon trial (MCL 766.13; MSA 28.931).

3. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION.

The minimum interval, between initial homicidal intent and ultimate action, required to premeditate and deliberate first-degree murder is not exactly determinable, but the interval should be long enough to afford a reasonable man time to subject the nature of his response to a "second look" (MCL 750.316; MSA 28.548).

4. CRIMINAL LAW — JURY INSTRUCTIONS — HOMICIDE — SELF-DE-FENSE.

It is error for a trial court to fail to instruct a jury in a murder trial on unintentional shooting or self-defense, even where defendant has not made a request for such instructions, where there is testimony which clearly establishes either of those

defense theories and the failure to instruct the jury as to those theories amounts to a failure to fully instruct as to the applicable law.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

A convicted person who attacks the adequacy of the representation which he received during his trial must prove his claim; to the extent that his claim depends on facts not of record, he must move for a new trial in the trial court and make a testimonial record which evidentially supports his claim and excludes hypotheses inconsistent with the claim.

6. JURY — JURY SELECTION — PEREMPTORY CHALLENGES.

Trial courts are to follow explicitly the court rule requiring that in the selection of a jury the parties are to alternately either use or waive the use of peremptory challenges to the jury (GCR 1963, 511.5, now MCR 2.511[E]).

7. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES — PROHIBITED CONSIDERATIONS.

A trial court may not base its departure from the sentencing guidelines on facts which evidence that the court independently found that the defendant was guilty of a greater charge of which the jury, by its verdict, found the defendant not to be guilty.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Jan J. Raven,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for defendant on appeal.

Before: CYNAR, P.J., and WAHLS and E. E. BORRADAILE,* JJ.

E. E. BORRADAILE, J. Defendant was charged with first-degree murder and felony-firearm. Following a jury trial during September of 1984 in Detroit Recorder's Court, defendant was convicted

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of voluntary manslaughter and was found not guilty of the felony-firearm count. He was sentenced to a term of ten to fifteen years and appeals as of right.

Defendant raises a number of questions: whether the preliminary examination testimony was insufficient to bind the defendant over for trial on the charge of first-degree murder, whether the trial court should have instructed the jury on the law pertaining to accidental killing in the absence of a request, whether there was inadequate representation by counsel at trial; whether a struck jury method of selecting the jury was used, and whether the sentencing judge ignored the jury verdict of acquittal of first-degree murder. We reverse and remand for new trial on the issue of the instruction.

I

Defendant claims that there was no evidence at the preliminary examination which would allow a rational trier of fact to find premeditation and deliberation, elements essential to a conviction of first-degree murder. Only two cases cited by appellate counsel in support of the issue are preliminary examination cases, those being *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979), and *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976). All other cases cited are trial issue cases and not applicable to the question raised in this particular case.

At the preliminary examination, Evelyn Waiters, sister of the decedent, John Taylor, testified that she was in her back yard watering her garden when she saw her brother and defendant standing at the side of the house, arguing loudly. Taylor's girlfriend, Brenda Thomas, was outside the gate.

Waiters went to talk to Thomas and found out that defendant was her ex-boyfriend. Defendant had a gun in his hand, but Waiters did not know where it came from. At one point defendant threatened to shoot her if she did not go in the house.

Waiters further testified that, as she walked into the house, she heard what she thought was defendant slapping Taylor in the head with the gun. She turned around and saw Taylor on the ground, holding his head. Waiters called the police; but, before she got off the phone, she heard what sounded like a gunshot and then heard a car as it sped off. She saw her brother come in the side door and fall. On cross-examination, she testified that her brother did not have a gun in the house and she did not know whether he had advanced upon or threatened defendant prior to the shooting. She said that there had been various garden tools on the side of the house. On redirect examination, she testified that she never saw a weapon in her brother's hand and that there were no tools in the area where her brother had been standing.

The next witness, Melissa Woods, a neighbor of Waiters, testified that she heard an argument outside and went to her porch to see what was happening. Two men were arguing across the street at Waiters's residence, one outside the fence and one inside the fence. She had seen the man inside the fence, but did not know his name. She identified defendant as the man standing outside the fence. She saw defendant reach over and hit the man inside the fence, who fell. Defendant turned as if to walk away, reached into his shorts, pulled out a gun, and fired at the other man from a distance of about four or five feet. She did not recall seeing anything in the decedent's hands. On cross-examination, she testified that she had never

seen the defendant before the night of the incident, that the incident took place about thirty to fifty feet from where she had been standing, and that she saw defendant's face only briefly during the argument, which lasted approximately twenty minutes. She saw no tools in the yard and could not hear what defendant was saying because he was speaking very softly and Taylor was talking louder.

The prosecutor moved to bind the defendant over on first-degree murder and felony-firearm. Defense counsel objected to the bindover on the murder charge, arguing that the testimony had shown that there was a loud, angry argument between defendant and Taylor, which demonstrated "hot blood" on the part of defendant which would mitigate first-degree murder to manslaughter.

The examining magistrate stated:

> The Court finds, from the testimony offered today, that there was time for him to reflect. The one witness testified that he threatened her with a gun and told her to go in the house and that she saw her brother on the ground after hearing a noise. And the other witness testified that she also saw the victim being knocked to the ground. And that was enough time to reflect and to walk away, but instead he used the gun.
>
> And the Court finds from the testimony offered today, that the People have sustained their burden on both counts. And the Court finds that the People have proven each and every element of both the counts. And the Court finds that the crime, murder I, feloniously deliberately with malice of forethought and with premeditation to kill one, John Taylor, contrary to Section 750.316 MCLA [MSA 28.548], and Count II, did then and there carry or have possession of a firearm in the commission or attempt to commit a felony to wit:

Murder First Degree contrary to MCLA 750.277(d) [MSA 28.488(d)].

The Court finds that both of these Counts were committed in the City of Detroit. And from the testimony offered today, the Court finds there is probable cause to believe the Defendant committed both counts. The Defendant, therefore, shall be bound over for trial on the Counts contained in the complaint and warrant to Recorder's Court.

The standard for review of a magistrate's judgment in binding a case over for trial is set forth in *People v Grihm,* 148 Mich App 285, 289-290; 383 NW2d 631 (1986):

> It is well established that a reviewing court may not properly substitute its judgement for that of the magistrate, but may reverse only if it appears on the record that there has been an abuse of discretion. *People v Talley,* 410 Mich 378, 385; 301 NW2d 809 (1981). *People v Shipp,* 141 Mich App 610, 612; 367 NW2d 430 (1985). However, the "judgment" of the magistrate in this context is directed to findings of fact. *Talley, supra,* p 386. It is the duty of the magistrate to bind the defendant over for trial if it appears at the conclusion of the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931. See also *People v Doss,* 406 Mich 90, 100; 276 NW2d 9 (1979). If evidence conflicts or raises a reasonable doubt of a defendant's guilt, such questions should be left for the jury upon trial. *Doss, supra,* p 103; *Shipp, supra,* p 613.

Premeditation and deliberation require that there be a thought process undisturbed by hot blood and, although the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a

reasonable person time to subject the nature of the response to a second look. *People v Morrin,* 31 Mich App 301, 329-330; 187 NW2d 434 (1971), lv den 385 Mich 775 (1971). In *People v Tilley,* 405 Mich 38, 44-45; 273 NW2d 471 (1979), the Supreme Court noted that there was a sufficient interval of time to reflect where a codefendant's resistance led to an argument and scuffle during which defendant obtained possession of a police officer's gun. In that case, sufficient time for premeditation and deliberation was found, based on evidence revealing that the defendants were in control of the situation, that there was a delay of one second to one minute between securing possession of the gun and firing, and that Tilley fired a second volley of gunshots at a retreating officer.

The magistrate's finding is supported by testimony at the preliminary examination. There was testimony that the defendant started to walk away and then turned around and shot Taylor, sufficient evidence to show the element of premeditation and deliberation to support the magistrate's bindover. While the time involved was only a few seconds, that is still sufficient time for the "second look" required by *Morrin, supra.* While the testimony may raise a strong possibility that there was provocation, which would negate the premeditation and deliberation requirement, the fact that evidence conflicts or raises a reasonable doubt as to a defendant's guilt is an issue left for the jury. *Doss, supra.*

The trial judge properly denied defendant's pretrial motion to quash.

II

The second question raised by defendant is that the trial court committed reversible error by fail-

ing sua sponte to instruct the jury with respect to the law applicable to defendant's theory that the killing was accidental. A review of the jury instructions shows that the trial court instructed the jury on first-degree and second-degree murder, voluntary and involuntary manslaughter, and careless and negligent use of a firearm which results in death, but gave no instructions on the theories of the parties or defenses. In closing argument, defense counsel argued that the jury should not convict defendant as charged, but rather of either manslaughter or perhaps reckless discharge of a firearm. He did not request an instruction on self-defense or accident. Defendant has also raised a question as to inadequate representation of counsel which we will discuss later.

A review of some of the testimony is necessary for us to answer this question. Evelyn Waiters, decedent's sister who had testified at the preliminary examination, indicated that her brother did not keep a gun in the house nor carry a gun and that she saw nothing in his hands during the incident. She admitted on cross-examination that she said at the preliminary examination she didn't know where the gun in defendant's hand had come from, though she testified at trial that defendant pulled the gun from under his T-shirt.

Melissa Woods, who also testified at the preliminary examination, testified that defendant and the decedent engaged in an angry, violent argument lasting five to ten minutes before the shooting. She saw no physical contact between the two before defendant knocked decedent down and fired one shot at him. Other witnesses testified about the argument and hearing shots.

A pathologist testified that she conducted an autopsy on Taylor and determined that the cause of death was a gunshot wound to the neck. She

further testified that the absence of gunpowder traces embedded under the superficial layer of skin around the gunshot wound tended to indicate that the muzzle-to-target distance was greater than eighteen inches. She acknowledged that her testimony was based upon a visual test and that eighteen inches was only an approximation.

Brenda Thomas had testified that she had dated the decedent Taylor occasionally and that defendant was her "ex-man." On the day in question, she drove to Taylor's house. He was expecting her. She had seen defendant a few times since their mutual and amicable breakup. She knew defendant would be at Taylor's house because Taylor had told her he wanted to see defendant. She was going to Taylor's house to pick up a .32-caliber handgun which she had left with him a couple of nights before the shooting. When she arrived, she began talking to Taylor on the side of his house from outside the gate. Defendant arrived ten to fifteen minutes later. Thomas at that point had not yet asked for the gun back. She further testified that Taylor asked defendant to come inside the gate and told Thomas to remain outside. The two men went inside the gate and started talking. Thomas could not hear what they were saying, but she heard defendant say that he did not care what Taylor and Thomas did together. She claimed that the men did not speak in loud voices.

Defendant and Taylor began tussling and arguing, defendant taking out of Taylor's back pocket a gun which Thomas said looked like hers. Defendant had the gun pointed down at his side.

According to Thomas, defendant came toward her, pointing his finger at her and accusing her of getting him involved in the altercation. She said that Taylor came behind defendant and hit him in his neck, back, or shoulder with garden shears or

grass clippers. Taylor had nothing in his hands before defendant arrived. The gun was in defendant's right hand when he was hit, and he fell into the fence. The two men began wrestling again, but no punches were thrown. While they were wrestling, the gun went off. Thomas said that she was about seven feet away at this time. She was not sure if Taylor had the grass clippers in his hand during the fight. The two men were standing and facing each other when the gun went off, but she could not remember in which of defendant's hands he held the gun. Defendant was bent over Taylor a bit when the gun went off. The gun was about five feet off the ground, pointed up. She did not see defendant pull the trigger, nor did she see defendant hit Taylor or Taylor fall down before the gun went off. After the shot was fired, Taylor fell down. Defendant looked at Taylor and said, "Damn, what have I got into now?" and left the scene.

Defendant testified that he had gone out with Brenda Thomas for about three years until the relationship ended amicably in March of 1982. He had met Taylor about twenty-one years previously through Taylor's brother. He had not seen Taylor recently because Taylor had left Detroit and returned only in early 1982, but their relationship was friendly in spite of the fact that Taylor and Thomas were dating. Defendant further said that Taylor had asked him to come to the house on the day in question and that Taylor seemed calm when they spoke.

Defendant testified that Taylor appeared calm and said nothing when defendant walked up to him and asked, "What's happening?". Taylor asked defendant to come to the side of the house to talk about Thomas. Defendant claimed that Taylor told Thomas to stay where she was and shut up and that an argument began to develop

concerning the fact that Thomas was using defendant's car. The two men argued loudly, using profanity.

Defendant claimed that he saw a gun in Taylor's pocket when they started up the walk and became concerned about it when he realized that Taylor was very angry about the relationship between defendant and Thomas. He got close enough to Taylor to prevent him from getting to the gun. He said that Taylor stuck his finger in defendant's face. When defendant told him to stop, Taylor reached for the gun, but defendant grabbed the gun first and the two struggled for it momentarily: Defendant snatched the gun and pushed Taylor, believing that Taylor was going to shoot him. Defendant started to leave but stopped to reprimand Thomas for bringing him there. Thomas denied any responsibility for what had happened and told defendant the gun belonged to her. Defendant claimed that Taylor then hit him twice from behind with what defendant thought was a garden tool. Defendant said that he turned around with the gun still in his hand, started to fall into Taylor, who grabbed him, and they fell against the side of the house, wrestling. He said that the gun had been in his right hand, but at some point he switched hands so he could defend himself with his right hand. He said that Taylor was still trying to get the gun and they began to struggle for it. Defendant's right hand was grabbing Taylor's shirt, and Taylor had his hand on defendant's left hand. During the scuffle, Taylor slipped. As defendant was pushing him, Taylor pushed back and the gun went off. Defendant said that he never intended to shoot Taylor.

Defendant claimed that he did not know Taylor had been shot and that, when Taylor grabbed his heart when falling to the ground, he thought

Taylor was having a heart attack. Defendant also said that he ran as a reaction to a man's being shot, and he was afraid. On cross-examination, he said that he did not know that Thomas would be at Taylor's home. He also testified that he recognized the gun that Taylor had as the .32-caliber Colt revolver which had belonged to Thomas.

The court instructed on the charges of first-degree and second-degree murder and the lesser included offenses. After instruction, the jury requested a distinction between voluntary and involuntary manslaughter and received further instruction on that point from the court. After about 3½ hours deliberation the first day, the jury reassembled the following morning and, after four more hours deliberation, found defendant guilty of voluntary manslaughter and not guilty of felony-firearm.

The prosecutor argues on appeal that this Court should find that a request must be made before a trial judge has a duty to instruct the jury on a necessary defense. MCL 768.29; MSA 28.1052 provides:

It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused.

GCR 516.2 provided that "[n]o party may assign

as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection." This case was tried before the effective date of MCR 2.516(B)(3), which provides that "[a]fter the arguments are completed, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests as provided in subrule (A)(2), that party's theory of the case." In *People v Trammell,* 70 Mich App 351, 354; 247 NW2d 311 (1976), the Court said:

> Thus, when no objection is raised to alleged errors in jury instructions, the verdict will not be set aside on the basis of those errors unless they have resulted in a miscarriage of justice, *People v Szymarek,* 57 Mich App 354, 356-357; 225 NW2d 765 (1975), *People v Wheat,* 55 Mich App 559, 563; 223 NW2d 73 (1974).

It is quite clear in this case that defense counsel was concerned about the fact that his client was charged with first-degree murder and, as noted above, he argued in his final argument that the most the defendant could be guilty of would be manslaughter or reckless discharge of a firearm resulting in death. It is a very difficult question for a trial judge to determine if an instruction must be given on a defense which apparently comes out in testimony when trial counsel has not raised the question. It would appear from *People v Morris,* 99 Mich App 98; 297 NW2d 623 (1980), that a defendant is entitled to instruction with respect to the law of accident as a defense, even absent a request, only if the issue was central to defendant's case. *Morris* discusses what "central to defendant's case" means:

In the above-cited cases and others, it is readily apparent that defense counsel emphasized the particular defense theory at trial. For instance, in *Ora Jones* [395 Mich 379, 385; 236 NW2d 461 (1975)] it is noted that defense counsel asserted accident as a defense in both opening and closing statements. The same was true in *People v Lester* [406 Mich 252, 253-254, 277 NW2d 633 (1979)], and in *People v Hoskins,* 403 Mich 95, 99; 267 NW2d 417 (1978), where the opinion recites that, "[d]efense counsel advanced his theory of self-defense from his initial voir dire of and opening remarks to the jury through his closing argument".

In contrast, the present defendant's theory of defense was clearly and repeatedly stated to be one of diminished capacity. Defense counsel in both opening and closing arguments, and during discussions while trial was in progress, explicitly asserted that he was pursuing a defense of diminished capacity to intend to commit murder. Nowhere in the transcript did defense counsel proffer a defense based on accident. Through defense witnesses and throughout his arguments defense counsel focused upon defendant's relationship with her husband and upon the psychological inability of defendant to form a plan to kill her husband. Defendant did testify that she picked up her husband's pistol intending to frighten him and that the gun went off. She stated, "I guess I must have struck the trigger. I didn't intend to do it though." And in closing argument defense counsel asserted, "You've got to squeeze the trigger to go off. I'm not going to suggest to you that Hazel Morris didn't have her hand on it and that it did not go off. It's like—a sneeze or a cough, it happened." Perhaps this testimony and these comments of counsel do describe an accident, but that does not mean that the theory of defense was one of accident. Rather, the entire record demonstrates a defense based upon the diminished capacity of the defendant. [99 Mich App 100-101.]

Commentary to CJI 7:1:01 to 7:1:05, p 7-17 states:

The word "accident" has no precise definition. Like the word "ignorance," it contains several concepts, one of which may excuse while another may not excuse at all.

In the criminal law, accident appears to occur most commonly in one of two ways. Either the person does not volitionally commit the act, or he volitionally commits the act but is unaware of, and does not intend, the consequences.

In the first instance, there is no willed movement and the result which occurs is the effect of some outside force or of an occurrence not planned or intended to occur at all. Thus, where a gun is discharged because of coming into contact with a wall and not as a result of intending to pull the trigger, we call it accident. Similarly, if the finger of the person holding the gun were squeezed by some outside force so that it were forced to activate the trigger mechanism, it would be accidental as to that person. The same occurs if A, being bumped by B, knocks into C, forcing him over a cliff. In any of these instances enumerated there can be no criminal act because there is no volitional act. Such actions cannot be deterred and indicate that the actor did not have the requisite criminal mens rea. See Perkins, Criminal Law (2d ed), pp 749-750.

In this case, we do not face the question of whether the court failed to give a requested theory of the case, nor are we faced with the question of whether the court denied a request to give an instruction, because no request was made in this case either as to theory or as to the instruction on accident or, in the alternative, self-defense. *People v Ora Jones,* 395 Mich 379, 393; 236 NW2d 461 (1975), relative to failure to give one party's theory while giving another party's theory, is not at issue in this case. Nor are we faced with the question raised in *People v Hoskins,* 403 Mich 95; 267

NW2d 417 (1978), cited in *Morris, supra,* where the Court indicated that, if there is support from the evidence, defendant's theory of the case must be given and a defendant need not testify to merit an instruction on self-defense.

The trial court in this case properly instructed the jury from CJI 16:2:01 on first-degree premeditated murder and on second-degree murder as a necessarily included lesser offense, stating:

> Murder is the killing of one person by another with a certain mental intent. For murder, the defendant must have intended to kill, have intended to do great bodily harm or have wilfully and wantonly disregarded the strong and plain likelihood that death would result, and he must have done so under circumstances which did not justify, excuse, or lessen the crime.

Further, the trial judge, in giving the elements of second-degree murder, noted in the third element:

> A killing is not murder if it is justified or excused. Neither is it murder if it occurs under circumstances which make the killing a lesser crime of manslaughter or some other lesser included offense.

In *People v Trammell, supra,* p 354, the Court referred to *People v Neumann,* 35 Mich App 193, 196; 192 NW2d 345 (1971), in saying that instructional error will not occasion a miscarriage of justice unless the incorrect instruction pertains to a basic and controlling issue in the case. In defense counsel's opening statement in the instant case, he alluded to the fact that a very violent argument and a fight developed between the defendant and the decedent, that there was a struggle between the parties, and that as a consequence the

gun was discharged, causing the fatal bullet wound in decedent's neck. Defense counsel said:

> I think you'll agree when you've heard the proofs that, number one, that there was no premeditation, no deliberation, no intent to kill or injure the party; that, as a matter of fact, my client was in an effort to defend himself from an attack by the defendant, who himself had a weapon, and that's how he died.

When defendant took the witness stand, he testified to a struggle, claiming that the decedent hit him on the head from behind with a garden tool and that during the ensuing struggle the gun discharged.

In 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 565, the authors comment on GCR 516:

> While requested instructions serve important functions in assisting the court to formulate its charge, the judge's power to instruct the jury is not limited to the mechanical acceptance or rejection of requested instructions. The court, of its own motion, may and should formulate instructions on issues in the case which were not covered by requests.

Consistent with *People v Trammell, supra,* and *People v Guillett,* 342 Mich 1; 69 NW2d 140 (1955), it is necessary to reverse if an important element is left out, even though defendant fails to request an instruction. Although there is a split in this Court as to whether there is a duty to instruct sua sponte on defendant's theory of the case, see *People v Seabrooks,* 135 Mich App 442, 449; 354 NW2d 374 (1984), there is no split of authority as to the court properly instructing upon the law.

*Ora Jones, supra,* p 394. In 75 Am Jur 2d, Trial, § 575, p 560, the authors say:

> With respect to criminal cases, the rule has sometimes been stated to be that whether requested or not, it is the duty of the court to instruct the jury upon all questions of law arising therein, or under some statutes, upon all questions of law necessary for the information of the jury in giving their verdict, whereas under some statutes it has been only in felony cases the court is required to give the law applicable to the case irrespective of a request to do so.

Because we reverse the trial court on this issue and remand the case for a new trial, we give no opinion as to whether the accused is entitled to have the jury instructed both as to unintentional shooting and self-defense, but at least one or the other must be given.[1]

### III

Defendant next argues that he was denied effective assistance of counsel, raising a number of claims, including that: defense counsel failed to request instruction on the defenses of accident and self-defense (which we have already covered in part II above); defense counsel committed a serious mistake by introducing evidence of defendant's prior convictions for unlawful use of an automobile and attempted carrying of a concealed weapon, because the convictions were so old they could not have been introduced pursuant to MRE 609(b); defense counsel committed serious error by

---

[1] See Anno: *Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense,* 15 ALR4th 983. See also Clark & Marshall, Crimes (5th ed), § 284, p 375 for the common law rule on the right of an aggressor to claim self-defense. See also *People v Peoples,* 75 Mich App 616; 255 NW2d 707 (1977), lv den 400 Mich 857 (1977).

not objecting to and in fact utilizing the struck jury method of selecting a jury (which we will deal with below in part IV); and, finally, defense counsel committed a serious error by failing to object to the introduction of highly prejudicial hearsay testimony.

Our search of the record does not indicate that appellate counsel has complied with the requirements of *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973), where the Supreme Court indicated that, if a defendant is convicted and the record does not factually support claims he wishes to urge on appeal, he must bring a motion for new trial to raise questions that will allow the trial judge to develop a record before he may appeal those matters. In *People v Ford,* 417 Mich 66, 112; 331 NW2d 878 (1982), the Supreme Court said:

> In *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973), this Court held that where a convicted person attacks the adequacy of the representation he received at trial, he must prove his claim. "To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately."

Inasmuch as this Court is satisfied that defendant has failed to comply with the *Ginther* rule, and because the matter is being sent back for new trial, it is unnecessary for this Court to deal with the issue. See Anno: *Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client,* 2 ALR4th 27, including a discussion of the Michigan rules in § 8(c) thereof, pp 128-131.

IV

Defendant also claims that a "struck jury" method was used to select a jury and that he is entitled to a reversal of his conviction because such a selection method violates GCR 1963, 511.6, now MCR 2.511(F). He argues that in *People v Miller,* 411 Mich 321; 307 NW2d 335 (1981), the Supreme Court held that the struck jury method of jury selection, or any system patterned thereafter, could not be used in the future and that automatic reversal is required, without a need for a demonstration of prejudice. Though this case has been reversed because of the court's failure to instruct on defenses, we will consider this issue briefly so that it does not occur on retrial.

Review of the record shows that, during jury selection, defense counsel was the first to exercise a peremptory challenge. After he exercised his first challenge, and before a replacement juror had been seated, the trial judge asked him if he wished to exercise any more. He excused five more jurors. At that point, six more jurors were seated. Following continued voir dire, defense counsel peremptorily challenged another juror. The trial judge again asked him if he wished to excuse any more, and he challenged two more jurors. Defense counsel did not use his remaining challenges, and the attorneys agreed upon the composition of the jury.

GCR 1963, 511.5 provided in part:

> After all challenges for cause are completed, the parties shall make or waive their peremptory challenges. First the plaintiff and then the defendant may exercise 1 or more peremptory challenges alternately until each party successively waives further peremptory challenges or all such challenges have been exercised. A juror peremptorily challenged is excused without cause.

GCR 1963, 511.6 provided:

> After a challenge for cause is sustained or a peremptory challenge exercised, another juror shall be selected and examined before further challenges are made. Such jurors shall be subject to challenge as are other jurors.

The note accompanying MCR 2.511(E) indicates that the rule differs from GCR 1963, 511.5 in that the later provision says that peremptory challenges are to be made after all challenges for cause are completed, but indicates that if a juror is peremptorily challenged and a new one called from the panel and questioned, the parties should be able to challenge that juror for cause. Subrule (E)(3) also makes it clear that a pass is not counted as a challenge but does constitute a waiver of further challenge to the jury panel as then constituted.

*People v Miller, supra,* makes it quite clear that the "struck jury method" of choosing a jury is not to be used, but the Court notes:

> A defendant is entitled to have the jury selected as provided by the rule. Where, as here, a selection procedure is challenged before the process begins, the failure to follow the procedure prescribed in the rule requires reversal. The "struck jury method" or any system patterned thereafter is disapproved and may not be used in the future. [411 Mich 326.]

Defendant claims that there was a lack of proper representation by his attorney in failing to object to the method used, but it is quite clear that, unlike *People v Miller, supra,* there was no objection to the method. It appears that the definition of struck jury as given by the various writers

and discussed in *People v Miller, supra,* is not the same method as was used in the instant case. There is a possible conflict in GCR 1963, 511.5 and GCR 1963, 511.6 which continues in MCR 2.511(E)(3)(a) and 2.511(F), in that the rules permit first the plaintiff and then the defendant to exercise one or more peremptory challenges. That issue was not involved in *Miller* because the trial judge prior to trial had informed the attorneys that the struck jury method would be used, with challenges for cause to be exercised before there was a seating of the jury. MCR 2.511(F) requires seating of another juror after a challenge for cause is sustained or a peremptory challenge is exercised, and that requirement must be followed. See *People v Lawless,* 136 Mich App 628, 635-636; 357 NW2d 724 (1984), lv den 422 Mich 881 (1985). We also note that the court rule clearly provides that plaintiff shall be called on for exercise of a peremptory challenge and then defendant, in that order. It appears from a review of the record that such was not done in this case. The trial court is adjured to follow the rule explicitly in requiring the parties respectively to exercise peremptory challenges.

v

Defendant raises a question as to sentencing, particularly claiming that the trial court abused its discretion in sentencing him to ten to fifteen years on a voluntary manslaughter conviction when the jury acquitted him of a first-degree murder charge. The trial judge stated as one of the reasons for departure from the sentencing guidelines that the crime was "too cold and deliberate."

Though we have referred the case back for retrial, it is necessary that we briefly discuss this

issue in case it arises again. A sentencing judge may depart from the guidelines for the reasons and in the manner prescribed by the guidelines.[2] The sentencing ranges in the sentencing guidelines are not mandatory and do not set binding limits on the exercise of a court's discretion to sentence. Thus, when a trial court exercises its discretion to depart from the guidelines, the exercise of that discretion is reviewed under the *Coles*[3] standard of whether the sentence imposed shocks the judicial conscience.

A trial judge is not entitled to make an independent finding of a defendant's guilt on another charge and assert that as a basis justifying sentence, especially where a defendant was found not guilty of that charge. *People v Grimmett,* 388 Mich 590, 608; 202 NW2d 278 (1972).

Because defendant was found not guilty of first-degree murder, there was no justification for imposing a sentence based upon the trial judge's opinion that the defendant should have been convicted of the greater offense. Other reasons that the trial judge gave for imposing sentence, such as the fact that a life was lost as a result of defendant's actions with its consequent social reverberations, were proper but were not included on the sentencing information report (SIR) and cannot save the impermissible reasons that were articulated on the SIR.

Defendant has also raised questions relative to a health condition which are not pertinent here. This Court accordingly finds that any other errors raised can be dealt with properly at the new trial.

Reversed and remanded for new trial.

[2] Administrative Order No. 1984-1, 418 Mich lxxx (1984); *People v Butts,* 144 Mich App 637; 376 NW2d 176 (1985), lv den 424 Mich 860 (1985); *People v Kenneth Johnson,* 144 Mich App 125; 373 NW2d 263 (1985), lv den 424 Mich 854 (1985).

[3] *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).