**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED APRIL 26, 2006

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

No. 128168

FRANK JAMES HAWTHORNE,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

PER CURIAM.

The issue in this case is whether a court's failure to instruct on the defense of accident requires automatic reversal of a defendant's conviction where accident was a central issue in the case. We hold that the failure to instruct on this defense requires reversal only where the defendant satisfies the standard explicated in *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999), and *People v Rodriguez*,

463 Mich 466, 474; 620 NW2d 13 (2000).[1]  In this case, defendant has not established that the alleged error undermined the reliability of the verdict.  We therefore reverse the judgment of the Court of Appeals and reinstate defendant's convictions of second-degree murder, MCL 750.317; and possession of a firearm during the commission of a felony, MCL 750.227b.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The Court of Appeals summarized the underlying facts:

On the evening of October 18, 2002, defendant and [Dennis] Jeffries met at an illegal gambling house and got into an argument over a $5 bet.  When the argument escalated, defendant walked out of the room and returned with an automatic handgun.  Two men tried unsuccessfully to disarm defendant.  Everyone present in the house then ran for the exits, except for Vance Claxton, who watched the encounter by peering around a wall.  Jeffries said to defendant, "What you going to do with the gun?  We supposed to be family.  We supposed to be better than that.  What, you going to shoot me?"  Jeffries then challenged defendant to a fight.  When defendant pressed the barrel of the gun into Jeffries's chest, Jeffries grabbed defendant's wrist and pushed him against the wall.  Claxton saw defendant and Jeffries standing face-to-face and speaking while Jeffries held defendant's wrist and they waved the gun around, pointing it in different directions.  Defendant was trying to push the gun toward Jeffries, and Jeffries was trying to push the gun away.  Claxton then looked away, and approximately two seconds later he heard a gunshot and saw Jeffries fall to the ground.

About ten seconds after the shot, Claxton heard defendant say, "Man, I'm sorry.  You know I didn't shoot you.  The gun was on safety.  I'm sorry."  Defendant found Claxton hiding in the bedroom and told him, "I shot Dennis by accident.  Come apply pressure to his chest."  Defendant told Claxton to call 911.  With defendant's help, Claxton put Jeffries in a car.  Claxton then drove

---

[1] The case before us involves a preserved, nonconstitutional error.  If the defendant had failed to preserve the issue, the plain-error standard set forth in *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999), would govern.

Jeffries to the hospital. More than a month later, Jeffries died from complications arising from the gunshot wound. [265 Mich App 47, 49-50; 692 NW2d 879 (2005).]

It is also noteworthy that before he started gambling, Jeffries had removed a wad of $100 bills from his jacket and counted it. He then returned the money to his jacket pocket and gambled with smaller denominations. When Jeffries' jacket and shirt were removed following the shooting, the money was missing from the jacket.

Defendant was charged with first-degree premeditated murder, MCL 750.316; first-degree felony murder, MCL 750.316; and felony-firearm. The court refused defendant's request to read CJI2d 7.1, the standard jury instruction on accident as a defense to murder. The court cited *People v Morrin*, 31 Mich App 301; 187 NW2d 434 (1971), and *People v Hess*, 214 Mich App 33; 543 NW2d 332 (1995), and stated that

> under the authority of *Hess* and *Morrin*, if the accident occurred in connection with some other unlawful act, because that's the way I'm reading those cases, then the accident defense is not available. It's not available in this setting. I think we talked about this in chambers. Factually speaking, at a very minimum your client committed a felonious assault by going into the living room, getting a gun, bringing it into the dining room and pointing it at the victim and threatening him.
>
> Now, there may not have been an intent to pull the trigger. The pulling of the trigger may have been an accident, but as I read *Hess* and *Morrin*, you're not entitled to the accident instruction unless your client essentially has clean hands so to speak and was not otherwise engaged in some other unlawful act. That's why I didn't give it.

3

If the Court of Appeals says I was wrong about that, well, so be it, but that's the way I read those two cases.[2]

The jury found defendant guilty of second-degree murder, as a lesser included offense of first-degree premeditated murder, and felony-firearm. The Court of Appeals reversed the convictions, but urged this Court to review the precedent that it believed required the reversal in light of *Lukity*. The Court of Appeal stated: "Were we free to apply *Lukity* without regard to prior decisions of the Supreme Court that suggest that the instructional error that occurred in this

---

[2] The Court of Appeals did conclude that the trial court had misread these cases, explaining:

> However, neither *Morrin* nor *Hess* precludes a defendant from receiving an instruction on accident as a defense to murder if there is evidence that the defendant's actions were criminally negligent. *Morrin* and *Hess* merely explained that, for a defendant to be completely excused from killing a person (i.e., to be acquitted of all charges of murder, manslaughter, and careless, reckless, or negligent discharge of a firearm causing death, etc.), the death must be the result of an accident, and the defendant cannot have acted with criminal negligence. *Hess, supra* at 38-39, held that accident is not a defense to involuntary manslaughter, because involuntary manslaughter is not an intent crime and accident is subsumed within that offense. Thus, a defendant is only excused from involuntary manslaughter if he did not act with criminal negligence. But the defendant need not be free of criminal negligence to be excused from a homicide charge that includes intent as one of its elements, such as murder. Accident is a viable defense to murder even if the defendant acted with criminal negligence. Neither *Morrin* nor *Hess* held that a defendant cannot be excused from murder if the death was an accident but was the result of the defendant's criminal negligence. [265 Mich App at 51-52.]

We agree with the Court of Appeals analysis.

4

case requires reversal, we would conclude that defendant did not establish a miscarriage of justice and affirm his convictions." 265 Mich App at 49.

The prosecutor filed an application for leave to appeal in this Court.

## II. STANDARD OF REVIEW

The question whether the *Lukity/Rodriguez* standard applies to the failure to instruct on the defense of accident is a question of law that we review de novo. *People v Young*, 472 Mich 130, 135; 693 NW2d 801 (2005).

## III. ANALYSIS

In finding that the trial court had erred in refusing to instruct on the defense of accident, the Court of Appeals observed that the trial court had conceded that "'there may not have been an intent to pull the trigger. The pulling of the trigger may have been an accident . . . .'" 265 Mich App at 52. The Court of Appeals agreed with the trial court that evidence was presented to support the defense of accident:

> Defendant and Jeffries were struggling for control of the gun when it discharged. After Jeffries was shot, defendant made statements indicating that he was sorry and that he had fired the gun accidentally. He also helped get medical attention for Jeffries. [*Id.*]

Further, the Court of Appeals opined that this Court's decisions in *People v Lester*, 406 Mich 252; 277 NW2d 633 (1979) (*Lester II*), and *People v Ora Jones*, 395 Mich 379; 236 NW2d 461 (1975), overruled on other grounds in *People v Cornell*, 466 Mich 335, 357-358; 646 NW2d 127 (2002), along with several Court

5

of Appeals cases,[3] mandate reversal for failure to give an accident instruction where accident was a central issue in the case. The Court of Appeals concluded that whether the shooting here was intentional or accidental was a central issue in this case, and that the failure to instruct the jury with CJI2d 7.1 therefore constituted error requiring reversal of defendant's convictions under *Lester II* and *Ora Jones*.

Nonetheless, the Court of Appeals urged this Court "to examine the continued viability of *Lester II* and *Ora Jones* and their progeny in light of *Lukity* and *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999)." 265 Mich App at 56. The Court of Appeals stated:

> Since *Lester II* and *Ora Jones* and their progeny were decided, our Supreme Court has set forth specific criteria that must be established before trial court error requires reversal. See *Carines*, *supra* at 774. In *Lukity*, *supra* at 494, our Supreme Court held that, to justify the reversal of a conviction in the case of preserved, nonconstitutional error, the defendant has the burden of establishing that the error asserted resulted in a miscarriage of justice under a "more probable than not" standard. We conclude that application of *Lukity* to the present case would result in a different outcome than that reached in *Lester II* and *Ora Jones* and their progeny. In those pre-*Lukity* decisions, the courts did not place the burden on the defendants to establish that the errors required reversal. We conclude that the facts presented in this case fail to establish error requiring reversal under the *Lukity* standard. The jury instructions explaining the intent element of murder made it clear that a finding of accident would be inconsistent with a finding that defendant possessed the intent required for murder. Accordingly, were we not bound by *Lester II* and *Ora Jones*, we would conclude that defendant cannot demonstrate that it is more probable than not

---

[3] See *People v Glover*, 154 Mich App 22; 397 NW2d 199 (1986); *People v Newman*, 107 Mich App 535; 309 NW2d 657 (1981); *People v Stanley Jones*, 69 Mich App 459; 245 NW2d 91 (1976).

6

that the trial court's failure to give the instruction on accident was outcome determinative. *Lukity*, *supra* at 496. [265 Mich App at 56-57.]

We agree with the Court of Appeals assessment that the *Lukity* standard should apply in this case. This Court has previously applied *Lukity* in reviewing a trial court's refusal to instruct on a defense theory.

In *Rodriguez*, *supra*, the trial court failed to instruct the jury regarding a statutory tax exemption. We explained that "'when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge.'" *Rodriguez, supra* at 472 (citation ommitted). Because the statutory exemption would have applied if the jury had believed the evidence introduced by the defendant, we concluded that the trial court had erred in failing to give the requested instruction.

We did not, however, treat this error as subject to automatic reversal. Rather, we considered whether the error was harmless. We explained that "nonconstitutional preserved error is evaluated under the standard set forth in" *Lukity*. *Id*. at 473. Under *Lukity*, the defendant has the burden to demonstrate that a preserved, nonconstitutional error resulted in a miscarriage of justice. MCL 769.26 sets forth a presumption that such an error does not warrant reversal "unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Lukity*, *supra* at 496 (quoting MCL 769.26). "'An error is deemed to have been "outcome determinative" if it undermined the reliability of the verdict.'" *Rodriguez*, *supra* at

7

474, quoting *People v Elston,* 462 Mich 751, 756; 614 NW2d 595 (2000), quoting

*People v Snyder*, 462 Mich 38, 45; 609 NW2d 831 (2000).

Similarly, in *People v Riddle*, 467 Mich 116; 649 NW2d 30 (2002), we applied the *Lukity*/*Rodriguez* standard to the failure to instruct on the defense theory that the defendant was not required to retreat before exercising deadly force in self-defense. We explained:

> A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. [*Rodriguez, supra* at 472]; *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995). When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction. *Rodriguez, supra* at 472-473; *Mills, supra* at 81. However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice. MCL 769.26; *Rodriguez, supra* at 473-474; [*Lukity, supra* at 493-494]. [*Riddle, supra* at 124-125.]

Our decisions in *Rodriguez* and *Riddle* make plain that the *Lukity* standard governs an appellate court's determination regarding whether a failure to instruct on a defense theory requires reversal. As the Court of Appeals in this case correctly observed, *Lester II* and *Ora Jones* and their progeny fail to adhere to the standard set forth in *Lukity* and mandated by MCL 769.26. We therefore overrule those decisions to the extent they are inconsistent with our decision in this case.[4]

---

[4] We note that rules of automatic reversal are disfavored. *People v Graves*, 458 Mich 476, 481; 581 NW2d 229 (1998); *People v Belanger*, 454 Mich 571, 575; 563 NW2d 665 (1997); *People v Pickens*, 446 Mich 298, 346; 521 NW2d 797 (1994); *People v Grant*, 445 Mich 535, 543; 520 NW2d 123 (1994); *People v McCline*, 442 Mich 127, 134 n 10; 499 NW2d 341 (1993); *People v Mosko*, 441 Mich 496, 502; 495 NW2d 534 (1992).

(continued…)

We can discern no principled reason why the failure to instruct on the defense of accident should be reviewed under a different standard than the defense theories at issue in *Rodriguez* and *Riddle*.

In deciding whether to overrule a precedent, we consider (1) whether the earlier decision was wrongly decided and (2) whether practical, real-world dislocations would arise from overruling the decision. *Robinson v Detroit*, 462 Mich 439, 464-466; 613 NW2d 307 (2000). As discussed, we believe that *Lester II* and *Ora Jones* were wrongly decided because their holdings create essentially a rule of automatic reversal, which is inconsistent with the text of MCL 769.26 and our decisions in *Lukity, Rodriguez*, and *Riddle*.[5]

Moreover, we can discern no practical, real-world dislocations that would arise from overruling *Lester II* and *Ora Jones*. Those decisions "have not become

---

(…continued)

We reject the dissent's claim that our opinion today is inconsistent with *People v Silver,* 466 Mich 386; 646 NW2d 150 (2002). The majority's opinion in that case did not purport to create a rule of automatic reversal. Rather, properly read, it is a case where the majority determined that the failure to instruct the jury regarding a necessarily lesser included offense undermined the reliability of that defendant's conviction.

[5] See, e.g., *People v Tucker*, 469 Mich 903 (2003), where we stated:

The Court of Appeals correctly applied the analysis found in *People v Carines*, 460 Mich 750 [597 NW2d 130] (1999), as the plain error rule of *Carines, supra*, has superseded the automatic reversal rule of *People v Smith*, 396 Mich 109 [240 NW2d 202] (1976).

See, also, *People v Young,* 472 Mich 130, 142; 693 NW2d 801 (2005), where we overruled the automatic reversal rule of *People v McCoy*, 392 Mich 231; 220 NW2d 456 (1974), because it contradicted MCL 769.26 and MCL 768.29.

so embedded, accepted or fundamental to society's expectations that overruling them would produce significant dislocations." *Robinson*, *supra* at 466. It is apparent that defendant did not act in reliance on *Lester II* and *Ora Jones* when he produced an automatic handgun and pointed it at the victim. If anything, his awareness of such decisions would have arisen only after the shooting and the filing of charges against him. "Such after-the-fact awareness does not rise to the level of a reliance interest because to have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event. Such a situation does not exist here." *Robinson*, *supra* at 466-467.

In addition, failing to overrule *Lester II* and *Ora Jones* would produce inconsistent rules regarding whether the failure to instruct on a defense theory requires reversal. As we held in *Rodriguez* and *Riddle*, such an error requires reversal only where the defendant has met the burden of establishing that the error undermined the reliability of the verdict. The decisions in *Rodriguez* and *Riddle* conform to the plain language of MCL 769.26, and "it is to the words of the statute itself that a citizen first looks for guidance in directing his actions." *Robinson*, *supra* at 467.

> Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction. [*Id*.]

10

Applying the *Lukity/Rodriguez* standard to this case, we agree with the Court of Appeals conclusion that defendant has not met his burden of demonstrating that the failure to instruct on the accident defense undermined the reliability of the verdict. As the Court of Appeals explained, "[t]he jury instructions explaining the intent element of murder made it clear that a finding of accident would be inconsistent with a finding that defendant possessed the intent required for murder." 265 Mich App at 57. Further, the jury was instructed regarding the lesser offense of statutory involuntary manslaughter, MCL 750.329,[6] but instead concluded that defendant was guilty of second-degree murder. If the jury had any doubts regarding whether defendant had the requisite malice for second-degree murder, it could have convicted him of statutory involuntary manslaughter, which does not require a finding of malice. The jury instead found that defendant possessed a mental state that was greater than simply intentionally pointing a weapon at the victim.

On the facts of this case, we conclude that defendant has not met his burden of demonstrating that the error affected the outcome of the proceedings. We

_____

[6] MCL 750.329, at the time relevant to this case, provided:

> . . . Any person who shall wound, maim or injure any other person by the discharge of any firearm, pointed or aimed, intentionally but without malice, at any such person, shall, if death ensue from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter.

11

therefore reverse the judgment of the Court of Appeals and reinstate defendant's

convictions.

Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

12

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                      No. 128168

FRANK JAMES HAWTHORNE,

    Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

The issue before the Court is whether we should disregard 30 years of Michigan law and overrule *People v Lester*[1] and *People v Ora Jones*[2] in light of *People v Lukity,*[3] and *People v Rodriguez.*[4]  I dissent from the majority's decision to do so, and I would affirm the judgment of the Court of Appeals.

### *LESTER* AND *ORA JONES*

Whenever the question whether there was an accident is central to a criminal case, a court's failure to instruct the jury on the defense of accident

---

[1] 406 Mich 252; 277 NW2d 633 (1979).

[2] 395 Mich 379; 236 NW2d 461 (1975), overruled on other grounds in *People v Cornell,* 466 Mich 335, 357-358; 646 NW2d 127 (2002).

[3] 460 Mich 484; 596 NW2d 607 (1999).

[4] 463 Mich 466; 620 NW2d 13 (2000).

requires automatic reversal. *Lester* and *Ora Jones* established this law many years ago, and I would not overrule it.

These two decisions recognize that a defendant is entitled to have the jury weighing the evidence against him or her be properly instructed. They also recognize the difficulty a defendant has in meeting a "harmless error" standard of review in the event of an instructional mistake.

To prove that the failure to give an instruction on the defense of accident was not harmless, the defendant must be able to prove the jury's thought process. Yet, it is nearly impossible for anyone not in the jury room to know how a jury reached its verdict. Hence, it is one of the most basic tenets of our judicial system that a court cannot attempt to journey behind a jury's verdict or into the jury room. *Lukity, supra* at 509 (Cavanagh J., dissenting).

THE FIRST PRONG OF *ROBINSON*

The majority's decision in this case represents a rejection of precedent. In *Robinson v Detroit*,[5] we articulated a two-part test for determining when it is proper for the Court to do so. A simplified statement of the test is this: it is proper to overrule a decision if (1) the case was wrongly decided and (2) there has not been extensive reliance on the decision so that striking down the precedent would not produce practical real-world dislocations. *Robinson, supra* at 466.

---

[5] 462 Mich 439; 613 NW2d 307 (2000).

2

In applying this test, we first ask whether *Lester* and *Ora Jones* were wrongly decided. The majority finds that they were. It opines that they are inconsistent with § 26 of the Code of Criminal Procedure, MCL 769.26, and *People v Lukity* and *People v Rodriguez,* cases decided many years later.

MCL 769.26 "controls judicial review of preserved, nonconstitutional error." *Lukity, supra* at 495. The question becomes whether *Lester* and *Ora Jones* are inconsistent with MCL 769.26, which has remained unchanged since it became effective in 1927. It provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

This statute places the burden on the defendant to prove that a miscarriage of justice occurred. *Lukity* stated that what a defendant must prove is that more probably than not a preserved nonconstitutional error influenced the outcome of the trial. *Lukity, supra* at 495.

It is my belief that *Lester* and *Ora Jones* do not conflict with MCL 769.26. Rather, they recognize that the failure to give the instruction where accident is a central issue results in a miscarriage of justice and undermines the reliability of the verdict. Because the error undermines the reliability of the verdict, it cannot be harmless. *People v Krueger,* 466 Mich 50, 54; 643 NW2d 223 (2002). The right to a properly instructed jury is fundamental to a criminal trial. Without the basic

3

protection provided in *Lester* and *Ora Jones*, many criminal trials in this state would fail utterly to serve as a reliable vehicle for determining guilt. *Arizona v Fulminante*, 499 US 279, 310; 111 S Ct 1246; 113 L Ed 2d 302 (1991).

THE SECOND PRONG OF *ROBINSON*

This Court decided *Ora Jones* in 1975. The rule expressed there has been followed by numerous decisions of the Court of Appeals.[6] Yet, the majority insists that it has not become embedded or fundamental to societal expectations, that overruling it would not produce significant real-world dislocations. Surely 30 years of reliance creates a presumption that the rule in *Ora Jones* has become fundamental to our system of justice.

The majority states that "defendant did not act in reliance on *Lester* [] or *Ora Jones* when he produced an automatic handgun and pointed it at the victim." *Ante* at 10. This characterization of the test for determining whether overruling precedent produces significant real-world dislocations is obviously ridiculous

---

[6] E.g., *People v Swaizer*, unpublished opinion per curiam of the Court of Appeals, issued June 16, 2005 (Docket No. 253443); *People v Brandt*, unpublished opinion per curiam of the Court of Appeals, issued January 16, 2001 (Docket No. 218588); *People v Fugate*, unpublished opinion per curiam of the Court of Appeals, issued January 19, 1999 (Docket No. 204109); *In re Evans*, unpublished opinion per curiam of the Court of Appeals, issued February 27, 1998 (Docket No. 203019); *People v Glover*, 154 Mich App 22; 397 NW2d 199 (1986); *People v Peery*, 119 Mich App 207; 326 NW2d 451 (1982); *People v Owens*, 108 Mich App 600; 310 NW2d 819 (1981); *People v Newman*, 107 Mich App 535; 309 NW2d 657 (1981); *People v Ritsema*, 105 Mich App 602; 307 NW2d 380 (1981); *People v Martin*, 100 Mich App 447; 298 NW2d 900 (1980); *People v Morris*, 99 Mich App 98; 297 NW2d 623 (1980); *People v Stanley Jones*, 69 Mich App 459; 245 NW2d 91 (1976).

when applied to precedent of the type involved here. However, it is not far-fetched to say that defendant knew that someone might be accidently shot during his skirmish with Jeffries. He was entitled to rely on the fact that the judge would tell the jury that his defense was that there had been an accident.

In addition, defense counsel had an embedded expectation that if he presented evidence of an accident at trial, the court would instruct the jury on that defense. But there is another major disruption to the justice system caused by the overturining of *Lester* and *Ora Jones*: Now an innocent defendant can be convicted if unable to carry the enormous burden of proving a different outcome but for the judge's failure to give an accident instruction.

In summary, *Lester* and *Ora Jones* do not contradict MCL 769.26. Moreover, the majority cannot gainsay that dislocations will arise after 30 years of reliance on *Ora Jones* by the courts of this state.

APPLICATION OF *LUKITY*

Notwithstanding my belief that the error involved in this case always requires automatic reversal, the majority's ruling in *Lukity* requires it.

The majority in this case was the same majority in *Lukity*. It states that the failure here to instruct the jury on Frank Hawthorne's accident defense did not undermine the reliability of the verdict against him. It relies on the fact that the court instructed the jury on statutory involuntary manslaughter.

The majority hypothesizes that the jury had no doubts about defendant's guilt of second-degree murder. Otherwise, it reasons, the jury would have

5

convicted defendant of statutory involuntary manslaughter. The majority believes that, because the jury found that defendant's intent was not simply to point a weapon at the victim, the jury would have disregarded an accident defense instruction. That is sheer guesswork.

Only four years ago, this Court rejected the very logic used by the majority now. *People v Silver*, 466 Mich 386; 646 NW2d 150 (2002).[7] *Silver* held that it was not harmless error for the trial court to fail to instruct the jury on a lesser included offense. It reasoned that "[n]ot to give [the jurors] an instruction that allowed them to agree with defendant's view of the events . . . undermines the reliability of the verdict" and violates MCL 768.32(1). *Id.* at 393. The majority does not and cannot reconcile its opinion here with its pronouncement in *Silver*.[8]

It is undisputed that, at various points throughout the trial in this case, defendant presented evidence that the shooting was an accident. Even so, the trial court failed to give defendant's requested accident instruction. As in *Silver,* defendant was thereby deprived of a jury instruction on his view of the events.

---

[7] There are several concurring and dissenting opinions in *Silver.* Justices Taylor, Young, Cavanagh, and I comprised the majority. We agreed that the same logic that the majority uses in this case is improper.

[8] The majority argues that this case does not conflict with *Silver* because the automatic reversal rule was not involved in *Silver*. The argument is unpersuasive. In *Silver*, the failure to properly instruct the jury on the defendant's version of events was enough to undermine the jury's verdict. That same failure to properly instruct equally undermines the jury's verdict in this case, making the error anything but harmless.

Therefore, just as in *Silver,* the failure here to give the instruction undermined the reliability of the verdict.

This is emphasized by the majority's supposition about the rationale used by the jury in its verdict. Such a guessing game is inconsistent with this Court's precedent and the general concept of fair proceedings as recognized in *Lukity* and *People v Carines,* 460 Mich 750; 597 NW2d 130 (1999).

CONCLUSION

I would not overrule the 30 years of precedent laid down by *Lester* and *Ora Jones.* Neither of these cases is inconsistent with MCL 769.26. Also, I would find that defendant met his burden of showing that the trial court's failure to instruct the jury on the accident defense undermined the reliability of the verdict.

The Court of Appeals judgment should be affirmed.

Marilyn Kelly

Cavanagh, J., would deny leave to appeal.

Michael F. Cavanagh

7