NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0594n.06

Nos. 14-1876, 15-2126

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Nov 04, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| PHILLIP BROWN, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| CINDI CURTIN; DAVID BERGH, | ) DISTRICT OF MICHIGAN |
| | ) |
| Respondents-Appellees. | ) |
| | AMENDED OPINION |

**BEFORE:** MOORE, GIBBONS, and DAVIS,[*] Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Phillip Brown, a Michigan prisoner, appeals the district court's denial of his petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. Following a jury trial in state court, Brown was convicted of first-degree murder and felonious assault. The district court granted a certificate of appealability (COA) on Brown's claims related to a note from the trial judge to the jury and the exclusion of evidence of a state witness's pending criminal charges. We expanded the COA to include Brown's claim of ineffective assistance of appellate counsel. Because any error by the state trial court was harmless, we affirm.

---

[*]The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

- 1 -

**I.**

In 2003, a jury convicted Brown of first-degree murder and felonious assault. The trial court sentenced him to life imprisonment for the murder conviction and twenty-three to forty-eight months of imprisonment for the assault conviction. The Michigan Court of Appeals affirmed his convictions and sentences, and the Michigan Supreme Court denied leave to appeal. *People v. Brown*, No. 247313, 2004 WL 1857995 (Mich. Ct. App. Aug. 19, 2004) (per curiam), *appeal denied*, 698 N.W.2d 393 (Mich. 2005) (table). Brown then sought post-conviction relief in state court. His initial motion for relief from judgment was denied by the trial court under Michigan Court Rule (MCR) 6.508(D)(3)[1] because his claims could have been raised on direct appeal. *People v. Brown*, No. 02-184580-FC (Cir. Ct. of Oakland Cty. Aug. 10, 2006). The trial court denied Brown's motion for reconsideration. *People v. Brown*, No. 02-184580-FC (Cir. Ct. of Oakland Cty. Mar. 29, 2007). The Michigan Court of Appeals affirmed the trial court's decision more broadly under MCR 6.508(D) and then denied a motion for reconsideration of its decision. *People v. Brown*, No. 283419 (Mich. Ct. App. May 12, 2008); *People v. Brown*, No. 283419 (Mich. Ct. App. Jul. 15, 2008). The Michigan Supreme Court then denied Brown's petition for appeal. *People v. Brown*, 762 N.W.2d 517 (Mich. 2009) (table). Unlike the trial and appellate courts, however, the Michigan Supreme Court cited MCR 6.502(G)[2] as the basis for its ruling. *Id.*

---

[1] MCR 6.508(D) provides that "[t]he defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion . . . (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence in a prior motion under this subchapter unless the defendant demonstrates [good cause and actual prejudice]."

[2] MCR 6.502(G) places a limit on a defendant's ability to file successive motions for relief from judgment.

Brown continued to file successive motions for relief from judgment, motions for a new trial, and petitions for state *habeas corpus* relief, all of which were denied. *See, e.g.*, *People v. Brown*, No. 02-184580-FC (Cir. Ct. of Oakland Cty. Feb 28, 2009); *Brown v. Curtin*, No. 08-13313-AH (Cir. Ct. Cty. Manistee Nov. 14, 2008); *Brown v. Dep't of Corr.*, 769 N.W.2d 714 (Mich. 2009) (table); *Brown v. Dep't of Corr.*, No. 289220 (Mich. Ct. App. Apr. 8, 2009); *People v. Brown*, No. 02-184580-FC (Cir. Ct. Oakland Cty. Dec. 17, 2010); *People v. Brown*, No. 02-184580-FC (Cir. Ct. of Oakland Cty. Sept. 19, 2012).

The evidence at trial showed that Randy Pardy went to the apartment that Brown shared with his roommate Brian Weigold in order to pay Weigold for some work Weigold had done. While Pardy was at the home, Brown shot him with an arrow and stabbed him with a hunting knife, causing three injuries: (1) an arrow wound extending from his right elbow through his right forearm and into his right chest; (2) a stab wound on the left side of his abdomen; and (3) a stab wound to his right-center chest that extended into his heart. After injuring Pardy, Brown fled to Georgia and turned himself in the next day.

The state and defense theories at trial differed as to who was the initial aggressor. The state's theory was that Brown was the aggressor; Brown attacked Pardy, shooting him with an arrow in the arm and chest, stabbing him once with a hunting knife, and then pursuing him into the bathroom where Brown broke down the door to stab him again. In contrast, Brown asserted a self-defense theory under which Pardy was the initial aggressor. According to Brown, he shot and stabbed Pardy in quick succession because Pardy threatened him with a knife and made him fear for his life.

Weigold, Brown's roommate and the only other eyewitness, testified for the state. According to Weigold, when Pardy arrived at the apartment, he entered without knocking, as he

often did, and Brown said: "Why don't you learn to knock like a normal fuckin' person." (R. 23-9, Weigold Trial Test., Page 70, Page ID 1043.) Pardy then told Brown to "lick his nuts," and Brown got mad, turned around, and slammed his bedroom door. (*Id.*)

After Pardy and Weigold had talked for some time in Weigold's room, Pardy's wife called, and Pardy got up to leave. Pardy walked towards the living room, and about ten seconds later, Weigold heard him say, "Oh, my God, I've been shot." (*Id.* at Page 77, Page ID 1050.) Weigold did not hear Pardy or Brown say anything else or scuffle. When Weigold ran toward Pardy, he saw Pardy leaning against the doorway between the kitchen and the utility room, with an arrow sticking out of the side of his arm. Pardy did not have a knife or gun, and he was not moving. Brown, standing near the front door, began running toward Pardy and jabbed at him with a hunting knife. Pardy then ran back through the kitchen, and as Brown began running after Pardy toward the rear of the apartment, Weigold grabbed Brown by the arm and said, "[W]hat the fuck are you doing?" (R. 23-10, Weigold Trial Test., Page 90, Page ID 1063.) Brown responded by swinging the knife at Weigold, and Weigold let go of Brown's arm and ran out of the house. When Brown swung the knife at him, Weigold saw a bow release on Brown's wrist.

From outside the apartment, Weigold used his cell phone to call 911 and told the dispatcher what had happened. Weigold observed Brown get in his car, and when the car approached Weigold, Brown stopped and told him to keep "[his] fuckin' mouth shut." (*Id.* at Page 97, Page ID 1070.)

On cross-examination, Weigold made a number of concessions. He admitted that he had not mentioned in his preliminary examination testimony or in his handwritten statement that Brown wore the bow/trigger release. Weigold also acknowledged that though he saw Brown jab at Pardy, he could not say for certain whether he actually struck him. Weigold admitted, too that

he did not actually see Pardy get shot with the arrow and did not know what happened when Pardy went into the living room because he was on the phone in his bedroom. Finally, the cross-examination revealed some inconsistencies between Weigold's preliminary examination and his trial testimony, including whether Weigold got up to greet Pardy and whether and when he saw Brown take the hunting knife into Brown's room earlier that day.

On redirect, Weigold testified that he had told Sergeant Gary Miller, the detective sergeant investigating the case, and the prosecutor about the trigger release prior to the preliminary examination, and Sergeant Miller corroborated this testimony.

The state also presented testimony from a first responder and a medical examiner. Ronald Jahlas, a firefighter and EMT with the Oxford Fire Department, testified about damage to the bathroom door. The bottom portion of the door was missing, and what was left had been torn apart, leaving sharp, jagged edges. The top portion was open against the bathroom wall. Jahlas also observed blood in the threshold area between the utility room and the kitchen, in different areas in the kitchen, including the right corner of the refrigerator, and in the bathroom.

Bernardino Pacris, the deputy medical examiner at the Oakland County Medical Examiner, testified about his autopsy of Pardy. The arrow wound did not injure any major organs, and the stab wound on the left side of Pardy's abdomen only injured the fat tissue of the stomach. The wound to Pardy's center chest, however, cut his heart and was fatal. Though Pacris testified that Pardy's stabbing injuries were consistent with the state's theory of the case, he conceded on cross-examination that he did not know how Brown and Pardy were positioned when the injuries occurred or the order of the injuries. Pacris also acknowledged that he found no defensive wounds on Pardy's body, though this had also been true in many other autopsies he had conducted involving fatal stab wounds.

Law enforcement officers who responded to Weigold's 911 call also testified. Sarah Myers, a deputy with the Oakland County Sheriff's Department, was one of the first to arrive. She observed Weigold excitedly telling her someone had been stabbed. When Myers entered the house, she noticed blood in the kitchen area but nothing disturbed in the kitchen or living room to indicate that there had been an altercation. Pardy was on the floor of the bathroom, with his head near the area of the toilet/tub and his feet extending toward the door. Stephen Clark, another deputy with the Sheriff's Department, testified that he found a bow, arrows, a trigger guard/release, and a quiver outside near the apartment. Finally, Sergeant Miller testified that a wrist release makes it easier to pull the string of a bow back and that it takes at least a few seconds to put on.

The prosecution also presented testimony from two Oakland County Sheriff's Department crime laboratory employees. Robert Charlton, a crime laboratory specialist in the forensic services unit, testified that the hunting knife used to stab Pardy and half of an arrow were found in the garbage can in the bathroom. Charlton also opined that the blood droplets in the kitchen and on the refrigerator indicated that the person bleeding was moving from north to south, or backwards, towards the bathroom. Finally, Charlton noted that he found multiple footwear impressions on the inside of the bathroom door consistent with Pardy's boots, though Charlton acknowledged on cross-examination that he could not be sure when the feet impressions were made or for what purpose. John Jacob from the crime laboratory then testified that he tested the two arrow halves, the one found in the bathroom and the other found outside the apartment, and determined that they were two halves of the same arrow.

Brown provided the defense's primary testimony. He testified that when Pardy arrived at the apartment, Brown asked him, "[W]hy don't you knock like a normal person." (R. 23-12,

Brown Trial Test., Page 68, Page ID 1267.) Pardy responded with "lick my balls, you fuck" and pushed Brown into a chair in the living room. (*Id.* at Page 69, Page ID 1268.) Brown then walked into his room and slammed the door. Later, Pardy gave Brown a "dirty look" from Weigold's room, and they got into an altercation. They ended up face to face in the living room by the bookcase. Brown was angry and told Pardy that he had to stop coming into the apartment without knocking whenever he wanted. The two men said "fuck you" to one another, and Pardy turned around and grabbed a knife from the bookcase. (*Id.* at Page 71, Page ID 1270.) Pardy stood approximately 2.5 feet away from Brown, who feared for his life. Brown then ran into the utility room. Pardy, whose face and eyes were red, held the knife up and looked Brown in the eye. Brown grabbed his bow and shot Pardy, without using the trigger release, as Pardy came towards him. Pardy dropped the knife, Brown dropped the bow, and Brown picked up the knife and stabbed Pardy in the chest when Pardy had started to reach down for the knife. Brown then stabbed Pardy again in the side. On cross-examination, Brown admitted that he stabbed Pardy the second time when Pardy posed no threat to him.

Pardy ran off, and as Brown pursued him, Weigold grabbed Brown. Brown flung Weigold's arm off and continued to go after Pardy, who was in the bathroom with the door shut. Brown eventually pushed and kicked the door open. Brown acknowledged that there was no rational explanation for why he went after Pardy into the bathroom. Brown said that he did not stab Pardy in the bathroom. Brown tried to get Weigold to help Pardy, but Weigold would not come near Brown. Brown dropped the knife in the garbage can and started to pull the arrow out of Pardy's body; the arrow broke in half during the process. Brown then retrieved the broken arrow from the bathroom, grabbed the bow, arrow, and trigger release, threw them over the

fence, and got in his car and started driving. Brown had no injuries when he turned himself in to law enforcement.

On cross-examination, Brown admitted that he would have been able to run outside when he went into the utility room to retrieve the bow and later when Pardy was running away from him. He also admitted that he had no reason to run after Pardy once he had stabbed him and that he still had the knife in his hand when he was trying to enter the bathroom. Similarly, Brown said that there was no reason for him to knock the bathroom door down.

Two other events during Brown's trial are relevant to his claims here. First, Brown attempted to cross-examine Weigold about pending[3] felony criminal sexual conduct charges against him, arguing that the charges were relevant to Weigold's "credibility" and "motivation for bias." (R. 23-9, Trial Tr., Page 35–36, Page ID 1008–09.) During *voir dire* without the jury present, Brown asked Weigold about his pending prosecution by Oakland County for three counts of criminal sexual conduct against minors, charges that had been pending for over two years. Weigold denied that there had been any conversations with anyone about a potential benefit from his testimony in this case or that he expected such a benefit. The trial court refused to allow this line of questioning on cross-examination.

The second event concerned messages between the trial judge and the jury. During deliberations, the jury sent the trial judge three separate notes. The first stated: "Forensic Report – finger prints on knife." (R. 23-24, Appl. for Leave to Appeal, App. B, Page ID 1845; R. 23-16, Trial Tr., Page 29, Page ID 1519.) The court responded, without objection from either party: "A fingerprint report was not introduced into evidence." (R. 23-24, Appl. for Leave to Appeal, App. B, Page ID 1846; R. 23-16, Trial Tr., Page 29, Page ID 1519.) The second note read:

---

[3] The record indicates that Brown believed Weigold had pled guilty and was awaiting sentencing, but during *voir dire*, Weigold testified that the charges were pending.

"testimony of Sheriff Department? Re: finger prints on knife." (R. 23-24, Appl. for Leave to Appeal, App. B, Page ID 1847; R. 23-16, Trial Tr., Page 31, Page ID 1521.) This time, the court responded: "Please rephrase your question. You need to be more specific." (R. 23-24, Appl. for Leave to Appeal, App. B, Page ID 1848; R. 23-16, Trial Tr., Page 31, Page ID 1521.) In the final note, the jury asked: "Is there any testimony regarding Randy Pardy's fingerprints on the hunting knife that was used in the murder? Some of the jurors seem to remember testimony about the knife, but there is some uncertainty." (R. 23-24, Appl. for Leave to Appeal, App. B, Page ID 1849; R. 23-16, Trial Tr., Page 32–33, Page ID 1522–23.) The court instructed the jury to try to use their collective memories and also said that it would search the record over the weekend. The following Monday, the court responded: "There were no fingerprints found on the knife." (R. 23-24, Appl. for Leave to Appeal, App. B, Page ID 1850; R. 23-17, Trial Tr., Page 3, Page ID 1531.) Both counsel stipulated to this response, though no fingerprint evidence was admitted at trial.

Brown's *habeas* petition raised fourteen grounds for relief. The district court denied his petition, finding that Brown was not entitled to *habeas* relief on the merits of any of his claims. *Brown v. Bergh*, No. 09-CV-14850, 2014 WL 2615372, at *2, *6–24 (E.D. Mich. June 12, 2014). The district court granted a COA on eight of Brown's claims, specifically those related to the trial court's note to the jury and the exclusion of testimony concerning Weigold's pending criminal charges. *Id.* at *10–24. We expanded the COA to include Brown's ineffective assistance of appellate counsel claim. (R. 10, Order at 5.)

Brown now appeals the district court's denial of his petition for a writ of *habeas corpus*.

**II.**

We review the district court's decision to grant or deny a *habeas* petition *de novo*. *Keys v. Booker*, 798 F.3d 442, 449 (6th Cir. 2015). On *habeas* review, we apply the Antiterrorism and Effective Death Penalty Act (AEDPA) and ask whether a state-court determination on the merits resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**III.**

Brown's appeal raises nine grounds for relief:

(1) The trial court violated Brown's confrontation rights by excluding evidence of three pending felony charges against Weigold, the state's key witness, that the jury could have used to infer bias and motive to fabricate or slant his testimony;

(2) The trial court denied Brown's right to be present at a critical stage of trial when the court offered new, unsupported evidence to the deliberating jury during supplemental instructions;

(3) The trial court erred by giving the deliberating jury new, unsupported evidence in the form of a "testimonial statement," thereby becoming an unsworn witness against Brown and denying him the right to confrontation in his absence;

(4) Brown was denied an impartial jury when the trial court gave the deliberating jury new, unsupported evidence not admitted during trial;

(5) The trial court deprived Brown of due process and a fair trial by instructing the jury with a conclusive mandatory presumption of fact on a contested issue, directing a verdict on a disputed element;

(6) The trial court violated Brown's right to counsel at a critical stage, where counsel failed to contest the state's evidence and waived Brown's right to be present during the supplemental jury instruction;

(7) The trial court violated Brown's right to a public trial by conducting a side-bar conference regarding jury instructions outside the presence of Brown, the jury, or the public;

(8) Appellate counsel was ineffective on direct appeal for failing to raise meritorious claims;

(9) Brown's confrontation rights were violated by the use of "surrogate" testimony by sending a note to the jury indicating that there were no fingerprints found on the knife.

The state argues that Brown procedurally defaulted these claims and that, even if he did not, they do not survive the deferential standard of AEDPA. We agree that two of Brown's claims related to the jury note were procedurally defaulted, but we reach the merits on the remaining claims. We also proceed directly to the merits on Brown's Confrontation Clause claim related to his cross-examination of Weigold because we are not required to address procedural default before deciding against a petitioner on the merits, and the procedural-default analysis would involve a complex analysis of Michigan law. *Fults v. Qualls*, 635 F. App'x 316, 321 (6th Cir. 2016) (quoting *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)).

**IV.**

Brown claims that the trial court violated his right under the Confrontation Clause to cross-examine Weigold, a key state witness, about Weigold's bias. Weigold, the only person other than Brown to witness the events, was charged with criminal sexual conduct with a minor at the time of his trial testimony, and the same prosecutor's office was prosecuting both Weigold and Brown. Even assuming that the trial court's refusal to allow Brown to cross-examine Weigold about his pending charges amounted to a constitutional violation, any error had no "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted).

**A.**

The Michigan Court of Appeals applied plain-error review to Brown's claim that the state trial court violated his Confrontation Clause right to cross-examine Weigold about his pending

charges. *Brown*, 2004 WL 1857995, at *1–2. Though our precedent is "uncertain[]" as to whether plain-error review qualifies as an adjudication on the merits subject to AEDPA deference, *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015); *accord Jackson v. Smith*, 745 F.3d 206, 209 (6th Cir. 2014), Brown's claim related to his cross-examination of Weigold fails under either AEDPA deference or *de novo* review. Because *de novo* review is less deferential, we apply this standard to Brown's Confrontation Clause claim.

**B.**

The Confrontation Clause of the Sixth Amendment secures, as one of its primary interests, the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). Such cross-examination includes the right to impeach a witness by showing bias. *Id.* at 316–17. To state a violation of the Confrontation Clause, a defendant must show "that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (alteration in original) (quoting *Davis*, 415 U.S. at 318).

If a federal *habeas* court finds a constitutional violation, it "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). The *Brecht* standard asks whether the constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict," 507 U.S. at 623 (citation omitted), and we have applied the five *Van Arsdall* factors when determining whether a Confrontation Clause error was

harmless under *Brecht*. *Vasquez v. Jones*, 496 F.3d 564, 574–75 (6th Cir. 2007). The five

factors include:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684.

Even assuming Brown can establish a constitutional violation, any error was harmless

under *Brecht*. Brown wished to cross-examine Weigold about pending felony charges against

him to show that Weigold, whether or not he had received a specific offer of leniency, might

have hoped to curry favor with the prosecution to help his pending case. The state trial court

ruled that the evidence was inadmissible, reasoning that Brown had not shown anything to

support his bias theory beyond "mere speculation." (R. 23-11, Trial Tr., Page 166, Page ID

1139.) Because Brown's cross-examination of Weigold undercut Wiegold's testimony in other

ways and the prosecution had a strong case against Brown, the denial of cross-examination

regarding Weigold's pending charges did not have a substantial and injurious effect on the jury's

verdict.

Applying the *Van Arsdall* factors, the first factor—the importance of the witness's

testimony—militates against a finding of harmless error. Weigold's testimony was central to the

prosecution's case. He was the only eyewitness to what happened besides Brown, and though he

did not see everything that transpired, he testified that Brown was the initial aggressor. The

second factor, the testimony's cumulativeness, however, suggests that any error was harmless.

Though Weigold was the only witness who testified that Brown attacked Pardy without

provocation, other witnesses testified about Pardy's injuries and the condition of the house, and

Brown testified about stabbing, shooting, and pursuing Pardy. The third *Van Arsdall* factor of corroboration also supports a finding of harmless error. Testimony from law enforcement and medical witnesses, as well as from Brown, corroborated material aspects of Weigold's testimony.

The fourth *Van Arsdall* factor, the extent of permitted cross-examination, likewise supports a finding of harmless error. Brown questioned Weigold on a number of points that undercut his testimony. Weigold admitted that he had not mentioned the trigger release in his preliminary examination testimony or in written statements to sheriff deputies, and he also contradicted what he said on direct examination regarding his fear of Brown. In addition, the cross-examination pointed out two inconsistencies between Weigold's trial testimony and his preliminary examination testimony regarding when Brown allegedly removed the knife from the bookshelf and whether Weigold was able to see this from his bedroom. Finally, the cross-examination undercut Weigold's testimony about whether he got up to greet Pardy when he came to the apartment that day and established that Weigold did not know what happened when Pardy went into the living room because Weigold was on the phone in his bedroom. The cross-examination gave the jury reason to discredit parts of Weigold's testimony.

The fifth and final factor also supports a finding of harmless error. Brown's self-defense theory was incredible because the evidence showed that he wounded Pardy three times, including once after Pardy no longer posed any threat, pursued Pardy through the house, and then broke down the bathroom door. Though the physical evidence was not necessarily inconsistent with Brown's testimony, the prosecution's case was strong even apart from Weigold's testimony.

Weighing these factors in the context of *Brecht*'s broader test, it is clear that denying cross-examination about Weigold's pending charges had no "substantial and injurious effect or

influence in determining the jury's verdict." 507 U.S. at 623 (citation omitted). The *Brecht* test

"is not one of 'actual prejudice.'" *Scott v. Gundy*, 100 F. App'x 476, 480 (6th Cir. 2004) (citing

*O'Neal v. McAninch*, 513 U.S. 432, 438–39 (1995); *Kotteakos v. United States*, 328 U.S. 750,

764–65 (1946); *Caldwell v. Bell*, 288 F.3d 838, 842–43 (6th Cir. 2002)). Nonetheless, for Brown

to obtain *habeas* relief, the error must have had "'substantial influence' on the verdict even if the

evidence otherwise supported the verdict." *Id.* (quoting *Caldwell*, 288 F.3d at 842).

An erroneous exclusion of evidence about Weigold's pending charges would not have

had a significant impact on the jury's deliberations. Brown admitted to shooting and stabbing

Pardy, so the key question was premeditation, the element distinguishing first-degree murder

under Michigan law from lesser homicide crimes. Michigan law permits jurors to draw an

inference of premeditation from the surrounding circumstances of a murder, including the

weapon used and the location of the victim's wounds. *People v. Plummer*, 581 N.W.2d 753, 757

(Mich. Ct. App. 1998). Even a "second look" or moment of deliberation can establish

premeditation. *People v. Glover*, 397 N.W.2d 199, 202–03 (Mich. Ct. App. 1986), *overruled on

other grounds by People v. Hawthorne*, 713 N.W.2d 724 (Mich. 2006). Thus, the jury could

have rested its premeditation finding on any one of a number of facts, including that Brown shot

Pardy with a bow, pursued him through the house, or wounded him three times, one of which

while Brown was admittedly no longer in danger. Given the strong case against Brown and the

improbability of his self-defense claim, preventing Brown from asking Weigold about his

pending charges did not have a "substantial and injurious effect or influence in determining the

jury's verdict." *Brecht*, 507 U.S. at 623 (citation omitted).

**V.**

Brown raises a number of claims related to a note that the trial judge sent to the jury in response to the jury's question about fingerprint evidence, including denial of his rights to be present, to confrontation, to an impartial jury, to a public trial, and to due process and a fair trial. The confrontation claims are procedurally defaulted under Michigan's waiver rule because Brown's attorney stipulated to the judge's note. As discussed below, state courts considered Brown's related ineffective assistance of trial counsel claim and his ineffective assistance of appellate counsel claim on the merits, and under AEDPA deference, those claims fail. Brown cannot establish cause to excuse the procedural default, as required by *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), because of the failure of his ineffective assistance of counsel claims. Brown's remaining claims related to the judge's note to the jury are not defaulted, but still fail on the merits because the note did not have a substantial or injurious effect on the jury's verdict. *Brecht*, 507 U.S. at 623.

**A.**

Brown failed to raise all but two[4] of his claims related to the judge's note on direct appeal. The Michigan Court of Appeals applied Michigan's waiver rule to extinguish any error based on the stipulation of Brown's attorney for the two claims he did raise on direct appeal. *Brown*, 2004 WL 1857995, at *6. We have held that the application of Michigan's waiver rule qualifies as an independent and adequate state ground barring *habeas* review. *Shahideh v.*

---

[4] On direct appeal, Brown argued that "[t]he trial court erred when, in answering a jury question, the court offered substantive evidence that was not introduced at trial" and thereby became an unsworn witness against Brown. (R. 23-22, Appellant Br. on Direct Appeal to Mich. Ct. App., Page ID 1569, 1627–28.) This claim most closely resembles Brown's two present Confrontation Clause claims regarding the judge's note.

*McKee*, 488 F. App'x 963, 964–65 (6th Cir. 2012) (per curiam); *McKissic v. Birkett*, 200 F. App'x 463, 470–71 (6th Cir. 2006).

Brown can overcome this procedural default, however, by showing cause and actual prejudice, or that a miscarriage of justice will result from enforcing the defaults in his case. *Coleman*, 501 U.S. at 750; *see Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). Though the Supreme Court has "not identified with precision exactly what constitutes 'cause' to excuse a procedural default," *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), such relief "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," including that the procedural default was the result of ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

**B.**

Brown argues that his trial counsel was ineffective for "apparently stipulat[ing] to the erroneous jury instruction." (R. 26, Appellant Br. at 25.) The Michigan Court of Appeals found that Brown "has not established any entitlement to relief based on ineffective assistance of counsel." *People v. Brown*, No. 247313, 2004 WL 1857995, at *6 (Mich. Ct. App. Aug. 19, 2004) Where the state court's reasons are unclear, "a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Moore v. Mitchell*, 708 F.3d 760, 776–77 (6th Cir. 2013) (alterations in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Under AEDPA deference, Brown's claim of ineffective assistance of trial counsel fails. To prove ineffective assistance of counsel, a petitioner must make two showings. First, he must demonstrate that counsel's performance did not meet "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with a reasonable probability defined as "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Brown bears the burden of rebutting the presumption that trial counsel acted "for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam).

The state court's determination that Brown did not satisfy *Strickland*'s requirements was not unreasonable. Even assuming that trial counsel was ineffective for not challenging the content of the note to the jury, it was not unreasonable for the state court to find no prejudice by interpreting the judge's note as having a neutral impact. The trial judge's final note stated that "[t]here were no fingerprints found on the knife": neither Pardy's fingerprints nor Brown's fingerprints. (R. 23-24, Appl. for Leave to Appeal, App. B, Page ID 1850; R. 23-17, Trial Tr., Page 3, Page ID 1531.) Since Brown admitted to stabbing Pardy with the knife twice and continuing to hold the knife until he reached the bathroom, the absence of any fingerprints, including Brown's, was inconclusive, making Brown's account of self-defense neither more nor less probable. Given Brown's admission of shooting and twice stabbing Pardy, it was not unreasonable for the state court to interpret the note this way and to determine that there was no reasonable probability of a different outcome.

Because Brown's ineffective assistance of trial counsel claim fails under AEDPA deference, he cannot show cause for his attorney's waiver at trial, and the claims the Michigan

Court of Appeals found to be waived are procedurally defaulted. Because his ineffective assistance of appellate counsel claim similarly fails under AEDPA, as we discuss below, Brown cannot excuse his default of the claims he did not raise until post-conviction. Finally, because Brown has not argued "that it is more likely than not that no reasonable juror would have convicted him" absent the judge's note, *Schlup v. Delo*, 513 U.S. 298, 327 (1995), he cannot show that a miscarriage of justice will result, the other avenue of establishing cause to overcome procedural default. *Coleman*, 501 U.S. at 750.

## C.

In reviewing Brown's claims, we first consider whether there was a procedural default. Because we conclude the claims are not procedurally barred, we proceed to review them on the merits. *See Atkins v. Holloway*, 802 F.3d 654, 657 (6th Cir. 2015).

To establish procedural default, "the last state court from which the petitioner sought review" must have invoked an applicable procedural rule "as a basis for its decision to reject reviewing petitioner's federal claims." *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). When "a state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded." *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005) (quoting *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001)). This holds even if a claim would have been procedurally defaulted had the state court applied the correct procedural rule. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012).

Brown raised the remaining claims related to the jury note in his first motion for relief from judgment under MCR 6.5000, and the Michigan Supreme Court dismissed his claims under

MCR 6.502(G). *People v. Brown*, 762 N.W.2d 517 (Mich. 2009) (table). This procedural rule limits when defendants can file successive motions for relief from judgment. MCR 6.502(G). Such a rule cannot apply to Brown's first motion for relief from judgment. Because the Michigan Supreme Court clearly applied the wrong procedural rule, we cannot find that Brown's remaining claims were procedurally defaulted. *White*, 431 F.3d at 517. It does not matter that Brown's claims would have been procedurally barred had the Michigan Supreme Court applied the correct procedural rule by citing to MCR 6.508(D)(3) in line with prior decisions on Brown's motion. *See Amos*, 683 F.3d at 728.

In the absence of a procedural bar, we proceed to consider Brown's remaining claims on the merits. The question before us, then, is whether the note to the jury, agreed to by the trial court and both counsel, denied Brown's rights to an impartial jury, to be present, to a public trial, and to due process and a fair trial.

The Sixth Amendment and the Due Process clause guarantee a criminal defendant the constitutional right to a trial by jury. *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993). Included in this right is the requirement "that a jury's verdict [is] based upon the evidence developed at the trial." *Turner v. Louisiana*, 379 U.S. 466, 472 (1965) (internal quotation marks omitted). "[A] trial by jury in a criminal case necessarily implies at the very least that the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right[s]." *Id.* at 472–73 (internal quotation marks omitted). We agree with Brown's contention that the agreed-upon response to the jury's final note—"There were no fingerprints found on the knife."—introduced a fact into evidence that had not been adduced at trial. (R. 23-17, Trial. Tr., Page ID 1531.) The trial court should have worded the response more carefully to reflect that there was no evidence introduced that

would indicate the knife had been examined for fingerprints. Even if we assume that such action constituted constitutional error, *see Wilson v. Mitchell*, 498 F.3d 491, 501 (6th Cir. 2007), we are foreclosed from granting Brown relief because we conclude that such error was harmless.

A *habeas* petitioner is entitled to relief based on constitutional error at trial only if "they can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Actual prejudice occurs if the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 622 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see Gover v. Perry*, 698 F.3d 295, 299 (6th Cir. 2012). After reviewing the record, we find that the response to the jury note did not require the jury to disregard Brown's self-defense theory and did not make it any more likely that the jury would disregard the theory on its own. Furthermore, the issue of whether there were fingerprints on the knife is insignificant when compared to the great weight of evidence supporting the state's theory that Brown attacked and murdered Pardy. Any error related to the jury note, thus, was nothing more than harmless.

As an initial matter, we reject Brown's claim that *Quercia v. United States*, 289 U.S. 466 (1933), precludes us from finding harmless error in this case. In *Quercia*, the Court granted *habeas* relief after the trial judge, in the course of instructing the jury, told them that he believed the defendant was lying during the entirety of his trial testimony. *Id.* at 468. Defense counsel immediately objected to the judge's comment. *Id.* at 469. The Court found "highly prejudicial" error because the judge had "put his own experience, with all the weight that could be attached to it, in the scale against the accused." *Id.* at 471–72. Brown's case is significantly different from Quercia's. The statement at issue was agreed to after consideration and discussion the trial court and both counsel. It was not an unplanned or undiscussed declaration by the trial judge.

Furthermore, by asserting that the defendant was lying, the *Quercia* trial judge clearly contradicted and prejudiced the defendant's case. As discussed below, the trial court's response here as to fingerprint evidence does not directly contradict Brown's theory of the case. Thus, we find *Quercia*'s holding to be distinguishable from the facts of this case.

Brown argues that the series of notes demonstrates that the "jury was obviously weighing the credibility of Brown's story" and that the trial court's response "informed the jury that Brown's self-defense story had no weight, and added to the evidence presented." We do not read the trial court's statement indicating there were no fingerprints on the knife to conclusively disprove or otherwise contradict Brown's self-defense claim. At best, the trial court's response is ambiguous as to its implications. The jury could have interpreted the lack of fingerprints as inconclusive, making Brown's self-defense theory neither more nor less probable (since Brown admitted to handling the knife). Alternatively, the jury could have concluded that the lack of fingerprints on the knife, combined with Brown's testimony he had held the knife, meant that Brown had wiped down the knife before discarding it. That the jury might have interpreted the trial court's broad statement to only refer to Pardy's fingerprints, although possible, is implausible. Brown's claim would have considerably more traction had the jury been told specifically that Pardy's fingerprints were not on the knife.

Our finding that the response to the jury note was harmless error is further supported by the considerable evidence supporting the state's theory of the case that Brown attacked Pardy, as well as the testimonial and physical evidence challenging Brown's self-defense theory. Even if the agreed-upon response to the jury note had some impact on the jury's determination of Brown's self-defense theory, it would have been insignificant in light of all the evidence.

Brown's trial testimony is consistent with the state's theory that he was the aggressor and rebuts his claim of self-defense. Brown admitted to shooting Pardy with an arrow and stabbing him two times with a hunting knife. He further testified that he stabbed Pardy a second time when he posed no threat to Brown and that he broke into the bathroom by kicking the door open after Pardy had barricaded himself inside. Finally, Brown admitted to attempting to get rid of the broken arrow, bow, and knife, before leaving the scene and driving to Georgia.

Brown's self-defense theory is also contradicted by the physical evidence in the case. The blood stains in the kitchen indicated that Pardy was backing up after he had been struck by the arrow, not moving towards Brown. First responders confirmed the significant damage to the bathroom door indicating that Brown had broken in. The medical examiner testified that Pardy's injuries were consistent with the state's theory that Brown was the initial aggressor. Pardy also suffered multiple wounds by multiple weapons at differing angles, a fact at odds with Brown's claim of self-defense. With all of the evidence, especially Brown's own statements, weighing against a claim of self-defense, we cannot find that the statement that there were no fingerprints on the knife sufficient to have a "substantial or injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637.

## VI.

Brown argues that his appellate counsel was ineffective for failing to raise the following claims: (1) a claim regarding his absence at a critical stage; (2) his constitutional jury instruction claim; (3) one of his prosecutor misconduct claims; and (4) his denial of an arraignment/notice/counsel claim. Brown also argues that appellate counsel was ineffective in concluding that his trial counsel stipulated to the jury instruction. The district court did not address appellate counsel ineffectiveness as a freestanding claim. Although the normal

procedure where a district court has not considered a pertinent issue is to remand, judicial economy and related considerations "dictate otherwise where the correct resolution of the issue is clear," as it is here. *In re Hronek*, 563 F.2d 296, 298 (6th Cir. 1977) (citing *Levin v. Miss. River Fuel Corp.*, 386 U.S. 162 (1967)); *cf. Dualite Sales & Serv., Inc. v. Moran Foods, Inc.*, 194 F. App'x 284, 291 (6th Cir. 2006).

"[C]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) (quoting *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)). The post-conviction state court addressed this claim on the merits and found that appellate counsel was not ineffective because the issues he would have raised were meritless. *People v. Brown*, No. 02-184580-FC, at *3–6 (Cir. Ct. of Oakland Cty. Aug. 10, 2006). Applying AEDPA deference, this state court conclusion does not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts. The state court applied the proper standard, and it was not an unreasonable application of federal law or an unreasonable determination of the facts for the state court to find that including these claims would not have changed the result of the appeal.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Brown's petition for a writ of *habeas corpus*.