*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DOMINIQUE RASHARD ROUNTREE,

        Defendant-Appellant.

UNPUBLISHED
August 17, 2023

No. 354035
Washtenaw Circuit Court
LC No. 19-000375-FC

Before: GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ.

GLEICHER, C.J. (*concurring in part and dissenting in part*).

The prosecutor charged Dominique Rountree with two serious felonies: assault with intent to commit murder (AWIM) and first-degree home invasion. David Goldstein, Rountree's lawyer, decided to defend only the AWIM charge, incorrectly believing that an acquittal of that count would automatically absolve Rountree of first-degree home invasion and its underlying felony-firearm charge. The majority concludes that counsel's strategic choice was reasonable. I respectfully disagree.

AWIM carries a potential penalty of life imprisonment, while first-degree home invasion is punishable by imprisonment for not more than 20 years. MCL 750.110a(5). Goldstein focused on the AWIM charge because it was the more serious of the two. The majority endorses that reasoning, holding that Goldstein was not ineffective for failing to investigate and secure witnesses whose testimony would have negated the home invasion charge. According to the majority, a defense attorney performs effectively by picking one of the charges his client faces and defending that one, while punting on a lesser charge. I cannot agree that Goldstein's decision to neglect any investigation of a defense to home invasion constituted reasonable performance. When added to Goldstein's other errors, I believe a new trial is warranted.

## I. BACKGROUND FACTS

Rountree entered the townhouse of his estranged girlfriend, Carmen Cruz, through a boarded-up basement window. He confronted Cruz and her new boyfriend, Brian Jackson, in their bed. A struggle ensued, a weapon was fired, and Jackson sustained a gunshot wound to the

abdomen.  Rountree's DNA was found on the gun's trigger and grip.  He stood trial for AWIM, MCL 750.83, first-degree home invasion, MCL 750.110a(2), and a handful of weapons charges.

This was not an easy case to defend given that along with the DNA evidence and Rountree's entrance through a basement window, the prosecution identified a motive: jealousy. But the jury acquitted Rountree of AWIM and the lesser included charge of assault with intent to commit great bodily harm less than murder.  The jury's questions and its difficulty reaching a unanimous verdict demonstrate that the prosecution's case was not as strong as it sounds on paper, likely due to the absence of Cruz and Jackson at the trial.  The evidence gathered during the *Ginther* hearing[1] reveals that Rountree also had a strong defense to the home-invasion charge.  But the jury never had a meaningful opportunity to consider that defense, undermining my confidence in the reliability of its verdict.

## II.  THE FORSAKEN HOME-INVASION DEFENSE

To prove first-degree home invasion, the prosecution had to convince the jury beyond a reasonable doubt that Rountree entered the townhouse "without permission," and that he "at any time while . . . entering, present in, or exiting the dwelling, commit[ted] a felony, larceny, or assault" while "armed with a dangerous weapon."  MCL 750.110a(2)(a).  Longstanding caselaw instructs that "both misdemeanor and felony assaults may properly be charged as crimes underlying first-degree home invasion."  *People v Sands*, 261 Mich App 158, 163; 680 NW2d 500 (2004).  This means that if the jury concluded that Rountree assaulted Jackson after entering the home without permission he was guilty of first-degree home invasion, regardless of whether the assault was committed with an intent to kill or to inflict great bodily harm.  A simple assault sufficed.  Given that Rountree's DNA was on the gun and Jackson's was not, and that Rountree admitted he did not know whether he had fired the gun, the prosecution had powerful evidence of an assault.[2]  On the other hand, if the jury believed that Rountree had "permission" to enter the home through the boarded-up basement window, the jury likely would have acquitted him of first-degree home invasion despite that a gun had been fired.

The prosecution bore the burden of proving beyond a reasonable doubt that Rountree entered the home "without permission," which means that the prosecution had to prove that Rountree had not "obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling."  MCL 750.110a(1)(c).  From the outset Rountree told Goldstein that he had permission to enter the home, including through the basement window.  Goldstein's version is that Rountree stated that "family members" would

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] Goldstein argued that if the gun was fired accidentally, Rountree could not be found guilty of an assault.  That was a nice argument, but Goldstein neglected to request an instruction on either accident or self-defense.  Indeed, even after the jury asked a question about the difference between an assault and self-defense, Goldstein okayed an instruction on simple assault and otherwise requested that the jury be advised to follow the instructions it had already been given.  Those instructions did not include self-defense or accident.  Without those instructions, no legal obstacle prevented the jury from concluding that Rountree had committed an assault.

support the "permission" defense. But Goldstein conceded at the *Ginther* hearing that he never followed up on this theory by investigating it or even attempting to determine whether it deserved investigation. In the majority's reconstruction of the testimony, Goldstein failed to act because Rountree did not give him enough information. But the record and the law belie this excuse.

First, the law. Rountree's constitutional right to counsel encompassed the right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To be constitutionally effective, Goldstein's performance had to satisfy an objective standard of reasonableness. *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015). Reasonably effective assistance is presumed when an attorney employs a "sound trial strategy." *Strickland*, 466 US at 689 (quotation marks and citation omitted). But "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Rather, a reviewing court must examine whether counsel's " 'strategic choices [were] made after less than complete investigation," and whether any choice is "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id.*, quoting *Strickand*, 466 US at 690-691. Viewed through this lens, Goldstein's decision to forgo any investigation of Rountree's permission defense to home invasion does not pass constitutional muster.

Next, the evidence. Goldstein knew or should have known that under the first-degree home invasion statute, if a home's "lessee" has permitted an accused to enter, the accused has lawfully entered and cannot be convicted of home invasion. Armed with this legal information, Goldstein should have determined that "the lessee" of the townhouse was a man named Joshua Anderson. Anderson is the father of Cruz's children and his name was in the police report. Rountree and Anderson knew each other well. At the *Ginther* hearing, Anderson testified unequivocally that Rountree had permission to enter the home, and that he knew that Rountree regularly used the basement window to gain entry. Anderson expressed that Rountree visited the home whenever he wanted, even after ending his relationship with Cruz:

> *Q.* . . . Now, in 2019, did Mr. Rountree have permission to be at your apartment?
>
> *A.* Yes.
>
> *Q.* . . . Did he have a key to your apartment?
>
> *A.* I'm not for certain. . . . I'm not for certain if he had a key, but I know he was always there. So I don't know.
>
> *Q.* . . . So, if Mr. Rountree would appear at your apartment unannounced, would that surprise you?
>
> *A.* No.
>
> *Q.* . . . Did you see Mr. Rountree's belongings at your home in 2019?
>
> *A.* Yes.

*Q.* . . . What about his mail?

*A.* Yes. His mail still comes to my house.

Anderson added that Rountree "showered" at the house and babysat the children "[a]nytime me and Carmen both had to work." As to the broken basement window, Anderson testified:

*Q.* . . . Now, if Mr. Rountree was ever locked out of your apartment, would he ever enter through the basement window?

*A.* Yeah, I think so. It was broken.

*Q.* . . . Did you ever tell him not to do that?

*A.* No.

*Q.* . . . Did it upset you that he did that?

*A.* No.

On cross-examination, Anderson reiterated that Rountree sometimes used the window to enter and agreed that doing so involved moving a loose board to get inside.

Cruz's mother, Christine Kucharski, also testified at the *Ginther* hearing. She supported that Rountree regularly spent time at the apartment, paid rent there, received his mail there, babysat her grandchildren there, and sometimes entered through the basement window. As the majority acknowledges, Kucharski testified that others, too, used the basement window when they were locked out of the home. While Kucharski did not have the authority to officially permit Rountree to enter the home through the basement window whenever he chose to do so, her testimony would have supplied strong circumstantial evidence supporting that his entries were made with the permission of Anderson and Cruz.

The majority excuses Goldstein's failure to advance the permission defense by first holding that Goldstein provided effective assistance despite doing no investigative work whatsoever on that theory: "Whether the testimony by Christina Kucharski and Joshua Anderson offered at the *Ginther* hearing would have been helpful to defendant had it been offered at trial is immaterial to our analysis because defendant has failed to establish that Goldstein erred by failing to procure it." Goldstein did not err, the majority continues, because according to Goldstein, Rountree did not provide him with "information identifying these witnesses [Anderson and Kucharski] or suggesting that their testimony would have been helpful." Respectfully, the majority mischaracterizes the record and the law.

Goldstein admitted at the *Ginther* hearing that he and Rountree discussed "calling witnesses who could point or substantiate his claim that he lived there or had access there." Although he could not recall hearing any "specific names," Goldstein did recollect that they talked about "a family member," stating "I can't remember if it was his mother or Carmen Cruz's mother that we talked about." The majority transforms Goldstein's lack of recollection testimony into evidence of unhelpfulness on Rountree's part. Indisputably, however, Rountree told Goldstein

-4-

that he had permission to come and go through the basement window, that witnesses would back him up, and that Rountree believed that permission would be a valid defense.

The majority incorrectly endorses the notion that Goldstein had no obligation to investigate the permission issue absent specific witness names. A defense attorney has a duty to investigate potential defenses. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v Smith*, 395 F3d 251, 258 (CA 6, 2005). By his own admission, Goldstein made no effort—not even a single phone call— to investigate whether someone could testify to Rountree's permitted status in the home. At a minimum, Rountree told him that such people existed. Goldstein's decision not to pursue this line of defense may have been a "strategic" choice, but it was not a reasonable one.

> "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." [*Hinton v Alabama*, 571 US 263, 274; 134 S Ct 1081; 188 L Ed 2d 1 (2014), quoting Strickland, 466 US at 690-691.]

The majority's analysis suggests that it was Rountree's burden to figure out how to prove permission, and to then supply Goldstein with a path to the evidence. Likely Rountree was unaware that MCL 750.110a(1)(c) included a "lessee" among those whose permission to enter a dwelling would negate a home invasion. But Goldstein should have known this, and he should have made at least some effort to find out whose name was on the lease. He could have started by asking Rountree. Further, shielding Goldstein from responsibility for failing to investigate this defense by putting the onus on Rountree fails for a more compelling reason. Goldstein's decision to forgo a permission investigation had nothing to do with Rountree's alleged failure to provide Goldstein with witness names. Goldstein never did *anything* to investigate a permission defense or to locate witnesses who might support it because he made a strategic decision not to. Rountree's alleged failure to hand Goldstein a witness list is irrelevant because Goldstein admitted that he intended to present a different defense and was not interested in pursuing a permission theory. Had Goldstein taken even a single step toward investigating a permission defense but come up dry, perhaps his decision not to pursue it could be construed as a legitimate tactical decision. But the complete failure to look for or talk to even a single witness who could corroborate Rountree's permission claim was an unreasonable choice.

Goldstein's decision to forego a permission defense also might have been "a reasonable professional judgment" if he had been forced to triage multiple investigative tasks and elected to put the permission defense last on the list while digging into better defenses. But Goldstein did no investigation of any kind. He went to trial anticipating that neither Cruz nor Jackson would testify. He planned to use their absence as a springboard for a winning argument that the prosecution failed to prove that Rountree had pulled the trigger, or that Rountree intended to harm Jackson. Goldstein testified at the *Ginther* hearing: "I explained to him that if they could not prove that he pulled the trigger, that was his best defense."

-5-

This defense was less than compelling because with only Rountree's DNA on the gun, Rountree was forced to testify to explain the circumstances surrounding the shooting. Rountree testified that he "put [his] hand on" the gun during the fight with Jackson, further admitting, "I don't know if it was under my control or if it was under Mr. Jackson's control. All I know is that the gun had went off."[3] Goldstein failed to anticipate that based on this testimony, the jury could easily find that Rountree committed an assault against Jackson satisfying the home invasion statute even without finding an intent to kill or to do great bodily harm.

At the *Ginther* hearing Goldstein admitted that he had put all his eggs into the basket of disputing that Rountree had an intent to murder or harm Jackson:

> *Q.* . . . And I take it your strategy was I need to make - - I need to make a successful defense against the assault charge, making a successful defense against the assault charge will also serve the purpose of a successful defense against the home invasion charge because the assault charge is subsumed within the home invasion charge. Is that essentially it?

> *A.* I think - - That's - - That's, in general, my view of the case.

But Goldstein overlooked that a simple assault sufficed under the home invasion statute, and that to prove a simple assault, the prosecution needed only to prove that Rountree intended to commit a battery or to put Jackson reasonably in fear of an imminent battery. In other words, Goldstein "dropped the basket (and maybe even stepped on the eggs)" by blinding himself to the weaknesses of his sole defense theory. *Benge v Johnson*, 474 F3d 236, 251 (CA 6, 2007) (Martin, J., dissenting).

Proof of Goldstein's legal error surfaced in his motion for JNOV, in which he asserted that "[t]he jury was not presented with any evidence supporting a claim that [Rountree] committed any other assault other than the assault contained in count 1 of the information." In fact, the jury asked for the definition of "assault" and, with Goldstein's assent, the court provided the jurors with M Crim JI 17.1, defining a simple assault and the intent accompanying it. That definition encompassed the conduct Rountree *admitted* to during his testimony.

The majority summarizes that "[c]ounsel's decisions regarding the choice of theories to present are . . . presumed to be sound exercises of trial strategy," and that a "reasonable lawyer in Goldstein's position would not further investigate [the permission] witnesses because there was no reason to believe that they had direct evidence to support defendant's contention, and a reasonable trial lawyer would understand that this testimony—as described to Goldstein by defendant—was likely inadmissible hearsay." Again, the majority errs. Counsel's decisions lose the protective cloak of "strategy" when they are uninformed by any research into underlying facts. "[D]efense counsel may not use trial strategy to insulate trial decisions if counsel cannot provide

---

[3] The balance of Rountree's testimony was not very helpful to his defense either, despite that he claimed that he had been given permission to enter the home. Had Goldstein done his homework and presented Anderson's testimony, likely there would have been no need for Rountree to take the stand.

a reasonable basis for the chosen strategy, particularly where, as here, the strategy is chosen before conducting any reasonable investigation." *Trakhtenberg*, 493 Mich at 53 n 8. See also *Rompilla v Beard*, 545 US 374, 387; 125 S Ct 2456; 162 L Ed 2d 360 (2005) (adopting with approval the American Bar Association Standards for Criminal Justice in effect at that time, which included "the duty . . . to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case . . .") (quotation marks omitted).

Furthermore, I am puzzled by the majority's claims that "there was no reason to believe" that any witnesses called to testify about the permission issue "had direct evidence to support defendant's contention," and that the testimony that might be offered by Cruz's mother (or others) was "likely inadmissible hearsay." Both Kucharski and Anderson provided direct and fully admissible evidence of Rountree's permitted access to the home through the basement window. The majority's evidentiary "analysis" is unconvincing.

Goldstein's failure to prepare and present a permission defense prejudiced Rountree. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. This was a close case, as the acquittal and the jury's questions demonstrate. The majority does not see it that way, summarizing that there was "strong evidence that no reasonable person in defendant's position would have a good-faith belief that he had the right to enter into Cruz's townhouse, barge into her bedroom in an intimate moment, and demand that her new boyfriend leave[.]" For this reason, the majority explains, it made sense for Goldstein to "focus on the assault charges." The majority's characterization of the case proves my point. Had Rountree shown that he had a perfect right to be in the home, he would have been able to attribute responsibility for the fight to the absent Jackson.

Rountree's jury struggled to reach a verdict and acquitted him of the two varieties of assault they were allowed to consider. The prosecution had no way to refute or to rebut Anderson's testimony that Rountree had the permission of the lessee to enter the townhouse, even using the basement window. If the jury believed Anderson, it would have to acquit Rountree of home invasion as well. And the prosecution has offered no reason to doubt the veracity of Anderson's testimony.

Goldstein's failure to make any effort to pursue a permission defense was constitutionally ineffective and undermines confidence in the outcome of this case. I would reverse Rountree's conviction on this ground.

III. THE NEGLECTED JURY INSTRUCTIONS

As mentioned above, Goldstein decided not to request jury instructions regarding self-defense or accident. The evidence supported both instructions. Contrary to the majority's analysis, both were relevant to defending against the assault element of the home invasion charge.

Rountree testified that moments after he entered the bedroom, he saw a gun on the window ledge and that Jackson grabbed it and cocked the trigger. Rountree described that he lunged for the gun and they "tussl[ed]" over it. The "tussl[e]" was a fight so vigorous that the combatants

damaged a wall. The gun went off during the "tussl[e]," wounding Jackson. Rountree denied having brought the gun into the home. His DNA was found on the grip and the trigger, however.

As discussed above, a conviction of first-degree home invasion may rest on a simple assault. The jury asked for clarification between an assault and self-defense. Self-defense is, of course, a defense to an assault. And when a defendant produces evidence supporting a self-defense claim, the prosecution bears the burden of disproving self-defense beyond a reasonable doubt. See *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014). Not only did Goldstein fail to request a self-defense instruction despite that the evidence supported it, he declined an opportunity to fix his mistake when the jury asked its question.

The majority opines that because Rountree "did not testify that he intentionally shot Jackson," the evidence would not have supported a self-defense instruction. This conclusion overlooks that the evidence supported that Rountree grabbed for the gun during a struggle, and that a simple assault includes an *attempt* to commit a battery or "an act that would cause a reasonable person to fear or apprehend an immediate battery." M Crim JI 17.1(2). The jury could—and did—find that Rountree committed an assault even though he lacked an intent to kill or wound Jackson. Self-defense was a perfectly valid defense to this form of assault because a successful self-defense negates an intent to kill or harm and would also have negated an intent to commit a battery.

The majority's position also ignores that Rountree's testimony described a classic self-defense scenario. In his closing argument, Goldstein concentrated on persuading the jurors that Rountree had not brought the gun to the home and therefore had no intent to kill or harm Jackson. And to his credit, Goldstein argued:

> If my client did not commit an assault, in other words, if you find that the struggle over the gun caused the gun to discharge accidentally regardless of whose hand was on the gun, regardless of whose hand was on the trigger, it's not an assault, then he's not guilty of count two [home invasion].

The facts and the evidence pointed toward an acquittal based on accident or self-defense, but Goldstein's failure to request appropriate instructions "deprive[d the] jurors of a judge-given map to reach that destination." *People v Leffew*, 508 Mich 625, 646; 975 NW2d 896 (2022).

Although the majority concedes that the trial evidence supported that the shooting was an accident, the majority takes the rather remarkable position that even if an instruction had been given, the outcome was unlikely to have differed. According to the majority, "[t]he trial court instructed the jury that it had to find that defendant had the specific intent to commit those crimes, which naturally would not be the case if the gun discharged accidentally." This analysis elides that an accident defense also negates specific intent. See, e.g., *People v Hess*, 214 Mich App 33, 38; 543 NW2d 332 (1995) ("Because voluntary manslaughter requires proof of intent, the defense of accident is applicable and the trial court in this case committed error requiring reversal in

instructing the jury that it was not.").[4]  And if the majority is correct, an accident instruction need not be given in any specific intent case, despite that the instruction specifically provides that if the defendant "did not intend" to commit the charged crime, "he/she is not guilty."  Yes, an astute jury might have connected the dots on its own, but that neither excuses Goldstein from requesting the instruction nor eliminates the prejudice.

Claims of self-defense or accident would have complemented rather than contradicted Rountree's testimony that he did not pull the trigger.  An effective defense advocate would have understood that relying on the jury to make the logical leap that an accident negates intent was a risky call.  No valid legal basis existed for neglecting to seek these instructions.

Given the jury's question about assault and self-defense, it is reasonably probable that if instructed that self-defense or accident were defenses to assault, a different result would have obtained.  This is particularly true about self-defense; the jury would have learned that the prosecution bore the burden of disproving that Rountree acted in self-defense.  The absence of Jackson and Cruz would have so hampered the prosecution's ability to disprove self-defense that it is reasonably probable that a different result would have obtained.

Rountree had several potentially successful defenses, but Goldstein ignored most of them.  Based on Goldstein's ineffectiveness, I would reverse Rountree's convictions for home invasion and felony-firearm, and remand for a new trial.[5]

/s/ Elizabeth L. Gleicher

---

[4] The majority's reliance on *People v Hawthorne*, 474 Mich 174; 713 NW2d 724 (2006), is misplaced.  The issue in *Hawthorne* was "whether a court's failure to instruct on the defense of accident requires automatic reversal of a defendant's conviction where accident was a central issue in the case." *Id*. at 176.  The Supreme Court held that it did not and applied instead the harmless error standard enunciated in *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). *Hawthorne*, 474 Mich at 181.  Under that standard, a defendant must show "that it is more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 496.  The prejudice standard governing ineffective assistance claims is different, and arguably lower: a reasonable probability of a different outcome. *Strickland*, 466 US at 694 (1984).  See also *People v Parsley*, 500 Mich 1033, 1033; 897 NW2d 742 (2017) (LARSEN, J., concurring).

[5] I concur with the majority's decision to vacate Rountree's sentences and to remand for resentencing.