*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTWAN RAVELL FLEMING,

        Defendant-Appellant.

UNPUBLISHED
February 29, 2024

No. 352596
Wayne Circuit Court
LC No. 19-004889-01-FC

ON REMAND

Before: CAMERON, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

This matter is on remand from the Michigan Supreme Court for reconsideration in light of *People v Yeager*, 511 Mich 478; ___ NW2d ___ (2023). See *People v Fleming*, ___ Mich ___; 995 NW2d 831 (2023). A jury convicted defendant of second-degree murder, MCL 750.317, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. *People v Fleming*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket No. 352596), p 1, vacated in part, remanded, and lv den in part ___ Mich ___; 995 NW2d 831 (2023). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 35 to 50 years' imprisonment for second-degree murder, one to five years' imprisonment for felon-in-possession, and five years' imprisonment for each felony-firearm conviction. *Id*. We affirm.

On the day of the murder, defendant encountered his wife, Chamia Fleming, arguing with the victim, Ronnie Byrd. *Id*. Defendant argued with the victim, and punched the victim in the face. *Id*. The victim's wife, Alicia Byrd, then hit defendant in the head with a glass bottle. *Id*. Defendant and the victim got into a physical altercation, and at some point, one of them had a gun and the victim was shot multiple times. *Id*. Defendant fled the scene. *Id*.

On appeal, defendant raised three claims of ineffective assistance of counsel. *Id*. at 2. At issue on remand is only his first claim—that his trial counsel was ineffective by failing to request

a jury instruction for the lesser included offense of voluntary manslaughter. *Id.* In its prior opinion, this Court concluded that the request for a voluntary manslaughter instruction would have undermined defendant's testimony—that he did not fire the gun and the victim accidentally shot himself—by implying that defendant did intentionally fire the gun, but with adequate provocation. *Id.* at 3. This Court concluded that trial counsel's decision not to undercut defendant's own trial testimony that the victim accidentally shot himself was reasonable. *Id.* at 3-4. This Court further concluded that "a rational view of the facts would not have supported a voluntary manslaughter instruction because there was insufficient provocation to negate malice." *Id.* at 4. This Court concluded that the only provocation defendant could have pointed to was the victim's insult— calling defendant's wife Fleming a "boojie fat b***h"—which was insufficient to support a voluntary manslaughter instruction because, though offensive, it was insufficient to cause a reasonable person to lose control. *Id.* After concluding that none of defendant's claims of ineffective assistance of counsel had merit, this Court affirmed defendant's convictions and sentences. *Id.* at 4-7.

Defendant filed an application for leave to appeal with our Supreme Court. The Supreme Court vacated Part I of this Court's opinion pertaining to the jury instruction for voluntary manslaughter, remanded to this Court for reconsideration in light of *Yeager*, and denied leave to appeal in all other respects. *Fleming*, ___ Mich at ___; 995 NW2d at 831. We now conclude that defendant fails to establish that trial counsel was ineffective by failing to request a jury instruction for the lesser included offense of voluntary manslaughter.[1]

As stated in *Yeager*, 511 Mich at 488:

In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Quotation marks and citations omitted.]

"Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy. However, counsel's strategic decisions must be objectively reasonable." *Id.* (citations omitted).

Like this case, *Yeager* involved a claim that the defendant's trial counsel was ineffective by failing to request a jury instruction on voluntary manslaughter. *Id.* at 484. The defendant was charged with first-degree premeditated murder in the killing of her boyfriend, Jonte Brooks. *Id.* at 484, 486. The defendant's trial counsel presented a self-defense theory at trial, and the jury was instructed on both first-degree and second-degree murder, but trial counsel did not request a

---

[1] Defendant preserved this issue by raising it in his motion for a new trial, which the trial court denied, but "because no [evidentiary] hearing was held, [this Court's] review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

voluntary manslaughter instruction because "he believed it to be mutually exclusive of the self-defense theory he presented at trial." *Id*. at 486.

In assessing the defendant's claim, the Court explained that the "failure to request a jury instruction may constitute an unreasonably deficient level of performance." *Id*. at 490. "[A] jury instruction on a necessarily included lesser offense is appropriate if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Id*. (quotation marks and citation omitted).

The Court concluded that the decision of the defendant's trial counsel not to request an instruction on voluntary manslaughter was objectively unreasonable. *Id*. First, the Court concluded that trial counsel's apparent belief that the theory of self-defense rendered the defendant's actions unintentional and that voluntary manslaughter would require an intentional act was based on a misunderstanding of the law. *Id*. at 491. The Court explained that "[m]urder as mitigated by self-defense and voluntary manslaughter are not distinguished by the element of intent because both contemplate an intentional act." *Id*. A finding of self-defense necessarily requires a finding that the defendant acted intentionally, but that the defendant's actions were justified. *Id*. "Rather, the distinction between murder and voluntary manslaughter is the element of malice, which in voluntary manslaughter is negated by the presence of provocation and heat of passion." *Id*. (quotation marks and citation omitted).

The Court further concluded that the voluntary manslaughter instruction would have been supported by the evidence presented in that case. *Id*. The Court explained:

> The testimony presented at trial reflected that defendant's shooting of Brooks was the culmination of a series of events during which Brooks physically assaulted defendant, took her car and used it to attempt to run her over, and repeatedly threatened to kill defendant and [Labarren] Borom, the neighbor who assisted her. Defendant testified that she feared for her life. At the *Ginther*[2] hearing, when asked about the moments leading up to the shooting, she explained, "I just remembered bein' scared. I don't remember details, like, walkin' towards him, or anything like that. And when I seen the video, I didn't even see myself, or remember shootin' as many times as they say I did." Borom also testified that defendant was hysterical and crying when she returned to his vehicle after the shooting. [*Id*. at 491-492.]

The Court concluded that a reasonable jury could conclude "that the combination of physical and verbal threats from Brooks throughout this unbroken chain of events stoked defendant's passions so that she acted out of heightened emotion rather than reason in shooting Brooks." *Id*. at 492.

The Court also concluded that the defendant was prejudiced by trial counsel's deficient performance. *Id*. at 494-495. The Court rejected this Court's conclusion that the failure to instruct on voluntary manslaughter is automatically harmless if the jury was instructed on both first- and

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-3-

second-degree murder and convicted the defendant of first-degree murder. *Id*. at 499. The Court clarified that

> when considering whether a jury should have been instructed on a lesser included offense, appellate courts must consider whether, in light of the proposed defense theory and the factual elements of the relevant offense, the intermediate charge rejected by the jury would necessarily have to indicate a lack of likelihood that the jury would have adopted the lesser requested charge. [*Id*. (quotation marks and citation omitted).]

The Court concluded:

> The jury instructions regarding first- and second-degree murder and self-defense do not encompass the distinct state of mind required for a voluntary manslaughter conviction. In the absence of instruction on the particular state of mind required for voluntary manslaughter, we cannot definitively conclude whether the jury would have determined that defendant's actions were provoked by inflamed passions or emotional excitement. [*Id*. at 500.]

The Court further rejected the argument that there was no prejudice on the basis that a rejection of adequate provocation was implicit in the finding of premeditation. *Id*. at 501. The Court explained:

> The *mens rea* of second-degree murder—malice—is also present in first-degree murder and thus was not rejected by the jury. Voluntary manslaughter likewise does not require an absence of malice; rather, the presence of adequate provocation excuses malice. Because first- and second-degree murder are not distinguished by *mens rea*, the jury's finding of malice does not speak to what the jury might have done were it instructed on adequate provocation. [*Id*. at 502.]

The Court concluded that the defendant established both prongs of her ineffective-assistance-of-counsel claim, trial counsel was ineffective by failing to request a jury instruction for voluntary manslaughter, and the defendant was entitled to a new trial. *Id*. at 504.

In this case, defendant's trial testimony was that the victim accidentally shot himself during the tussle between defendant and the victim. The trial court did not provide, nor did trial counsel request, a jury instruction on voluntary manslaughter. In order to determine whether trial counsel's decision not to request the instruction was objectively reasonable, it is necessary to consider whether a voluntary manslaughter instruction would have been supported by the evidence. See *id*. at 491-492. Defendant argues that the evidence established that he acted out of passion because the shooting occurred after he had been hit in the head with a bottle and fell to the ground in the midst of a fight with the victim.

Verbal exchanges are usually insufficient to constitute adequate provocation, but a significant physical dispute or fight might constitute adequate provocation that causes a defendant to act out of passion rather than reason. See *People v Roper*, 286 Mich App 77, 88; 777 NW2d 483 (2009). Although the facts are not as compelling as in *Yeager*, a physical altercation in which a person is hit in the head with a glass bottle could cause a reasonable person to lose control. While

there was no express testimony that defendant was scared, and one witness testified that defendant did not look scared, defendant testified that he reacted in order to try to " 'retain life.' " Furthermore, while the insult made by the victim was alone insufficient to constitute adequate provocation, the entire series of events that led up to the shooting presents a closer question whether a jury could reasonably conclude that the physical altercation stoked defendant's passions such that he acted out of heightened emotion rather than reason in shooting the victim. See *Yeager*, 511 Mich at 491-492 (considering the "series of events" culminating in the shooting).

Nonetheless, unlike in *Yeager*, trial counsel's decision not to request an instruction on voluntary manslaughter was not objectively unreasonable because defendant's trial testimony that the shooting was accidental meant that a voluntary manslaughter charge was inapplicable.[3] In *Yeager*, *id.* at 491, the Court compared self-defense and voluntary manslaughter, concluding that the two crimes are not distinguished by the element of intent because both contemplate an intentional act. However, a finding that the shooting in this case was accidental would necessarily require a finding that defendant's actions were unintentional. See *People v Hawthorne*, 474 Mich 174, 185; 713 NW2d 724 (2006) (stating that the jury instructions made clear that a finding of accident would be inconsistent with a finding that the defendant possessed the intent required for murder). Because voluntary manslaughter contemplates an intentional act, the charge was not applicable under defendant's accident theory. Unlike in *Yeager*, trial counsel's failure to request the voluntary manslaughter instruction was not clearly based on a misunderstanding of the law.

In this case, even if a rational view of the evidence would have supported the voluntary manslaughter instruction, requesting such instruction would have undermined defendant's testimony.[4] Trial counsel's decision to forgo the voluntary manslaughter instruction and avoid weakening defendant's testimony was reasonable trial strategy. Because trial counsel's decision not to request a voluntary manslaughter instruction was objectively reasonable in this case, defendant cannot establish the first prong of his ineffective-assistance-of-counsel claim and his claim fails.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Stephen L. Borrello

---

[3] Although trial counsel also argued that defendant acted in self-defense and the jury was so instructed, defendant testified that he never had his hands on the trigger of the gun.

[4] A defendant can assert inconsistent defenses if they are supported by the evidence. *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013). As noted, the jury was instructed on self-defense, which trial counsel argued could coexist with the accident theory. While the trial court questioned whether that instruction applied, the prosecution did not object to the self-defense instruction.